RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0026p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

KENNETH JAMES JOHNSON,

        *Defendant-Appellant*.

No. 07-2447

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00239-002—Paul Lewis Maloney, Chief District Judge.

Argued: January 22, 2009

Decided and Filed: January 26, 2009

Before: MARTIN and MOORE, Circuit Judges; GWIN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Martin J. Beres, LAW OFFICES OF MARTIN J. BERES, Clinton Township, Michigan, for Appellant. B. Rene Shekmer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Martin J. Beres, LAW OFFICES OF MARTIN J. BERES, Clinton Township, Michigan, for Appellant. B. Rene Shekmer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

    KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Kenneth James Johnson ("Johnson") appeals a 110-month sentence imposed after he pleaded

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

guilty to one count of conspiracy to distribute more than five grams of cocaine base (crack), one count of distribution of cocaine base (crack), and four counts of distribution of more than five grams of cocaine base (crack).  Johnson makes five arguments on appeal:  (1) the district court abused its discretion in ordering Johnson's federal sentence to be served consecutive to his state sentence for drug possession; (2) the within-guidelines sentence imposed is procedurally and substantively unreasonable; (3) the district court erred in failing to grant a downward departure on the ground that Johnson's criminal history category of VI substantially overrepresented the seriousness of his criminal history; (4) trial counsel was ineffective at sentencing by failing sufficiently to argue for a downward departure based upon Johnson's exceptional cooperation and acceptance of responsibility; (5) the district court erred in failing to articulate whether it considered Johnson's exceptional cooperation and acceptance of responsibility in denying Johnson's motion for a downward departure.

In light of the Supreme Court's recent decision in *Spears v. United States*, — S. Ct. —, No. 08-5721, 2009 WL 129044 (Jan. 21, 2009), we **VACATE** Johnson's sentence and **REMAND** for resentencing.  *Spears* held that district courts have the power to categorically reject and vary from the crack-cocaine sentencing guidelines based on a policy disagreement with the guidelines, even in a mine-run case such as this. Because the district court sentenced Johnson without the benefit of *Spears*, we remand for resentencing to give the district court an opportunity to impose a sentence with full recognition of its authority to reject and vary from the crack-cocaine Guidelines based solely on a policy disagreement with those Guidelines.

## I.  BACKGROUND

On October 11, 2006, a nine-count indictment was filed charging Johnson and his coconspirator, McKinley Laverne Underwood, with various counts relating to the distribution of crack cocaine from February 2006 to April 2006 in Kalamazoo County, Michigan. Joint Appendix ("J.A.") at 12-20 (Indictment). Johnson was indicted on one count of conspiracy to distribute more than five grams of cocaine base (crack) in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(iii), one count of distribution

of cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and four counts of distribution of more than five grams of cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). An admitted cocaine addict for much of his life, Johnson says that he delivered crack cocaine for Underwood, and in exchange Underwood gave him cocaine for his personal use. According to Johnson, Underwood would drive or accompany him to prearranged drug buys in parking lots, where Johnson would exit the vehicle, carry the crack cocaine to the buyer in another vehicle, and then return with the money to Underwood. Johnson's involvement came to light during an ongoing investigation of Underwood and followed a series of controlled buys by an undercover officer in March and April of 2006 in which Johnson delivered a total of 47.633 grams of cocaine base (crack).

Following a parole violation for his 2002 sentence for possession of cocaine, Johnson was arrested on July 16, 2006. Two days later, Johnson was interviewed at the Kalamazoo County Jail by a DEA agent and state drug-enforcement officers, including the undercover agent who conducted the controlled buys. After waiving his *Miranda* rights, Johnson stated that he first sold powder cocaine for Underwood from the summer of 2001 until August 2002, when he was imprisoned following a state conviction for possession of cocaine. Johnson said that after his release from prison in the summer of 2003, he returned to Underwood's operation to deliver both crack and powder cocaine on a daily basis. Johnson detailed the quantities of drugs he delivered for Underwood and the relevant time frames, described various inner-workings of Underwood's operation, and identified both Underwood's source of supply and his main customer.

On March 26, 2007, Johnson entered a plea of guilty to all six counts charged in the indictment before a magistrate judge, which was later accepted by the district court. Although there was no written plea agreement, the government stated at the plea hearing that if Johnson pleaded guilty instead of proceeding to trial, it would forego filing a supplemental notice of a prior felony-drug conviction that would enhance Johnson's potential sentence on five of the counts from five to forty years, to ten years to life in prison.

At the sentencing hearing on November 7, 2007, the district court determined that Johnson's total adjusted offense level was 25 and assessed his criminal history at Category VI, for a Guidelines range of 110–137 months. The Presentence Investigation Report ("PSR") had calculated a base offense level of 30 based on 47.663 grams of crack cocaine, a two-level downward adjustment for acceptance of responsibility, and a one-level downward adjustment for timely entry of a guilty plea, for a total offense level of 27. The district court lowered Johnson's base offense level by two levels pursuant to the amended cocaine base (crack) Guidelines, which became effective on November 1, 2007. *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2D1.1(c)(6) (2007) (providing a base offense level of 28 for at least 35 grams but less than 50 grams of cocaine base). This resulted in an adjusted offense level of 25. The district court declined to make a downward adjustment for a mitigating role pursuant to U.S.S.G. § 3B1.2, finding that Johnson was not a mere drug "mule" with no knowledge of the amount or price of the drugs he carried, but instead a key player who brokered drug transactions for Underwood's drug-distribution operation.

Johnson's criminal history was assessed at Category VI based on the following prior convictions: (1) a 1993 conviction for operating while impaired (1 point); (2) a 1995 conviction for retail fraud in the second degree (1 point); (3) a 1995 conviction for retail fraud in the first degree (3 points); (4) a 1999 conviction for possession of marijuana (2 points); (5) a 1999 conviction for aggravated domestic violence (1 point); (6) a 2001 conviction for retail fraud in the second degree (1 point); (7) a 2002 conviction for possession of less than 25 grams of cocaine (Johnson possessed 0.29 grams) (3 points). Two additional points were assessed pursuant to U.S.S.G. § 4A1.1(d) because Johnson was on parole for the 2002 conviction when he committed the instant offense, and one additional point was assessed pursuant to U.S.S.G. § 4A1.1(e) because Johnson committed the instant offense less than two years after he was released from custody for the 2002 conviction. Johnson was thus assessed with a total of 15 points for a criminal history of Category VI. At the sentencing hearing, the district court rejected Johnson's argument that the 1993 and 1995 convictions were more than ten years prior to the instant offense and therefore should not count toward his criminal history. *See*

U.S.S.G. § 4A1.2(e)(2) (providing that prior sentences imposed within ten years of the instance offense are counted in computing the criminal history).  Noting that the instant offense included relevant conduct under U.S.S.G. § 1B1.3, the court observed that Johnson had admitted to selling drugs for Underwood as early as the summer of 2001 and that the instant conspiracy dated to at least 2003.

Before announcing the sentence, the district judge heard in-court statements by Johnson and Johnson's brother regarding Johnson's history of drug addiction and need for treatment.  The district judge also explained that he had "read all the materials that have been presented to me, including the sentencing memorandum of defense counsel, as well as the letters in support of Mr. Johnson and Mr. Johnson's letter that he sent to the Court himself."  J.A. at 119 (Sent. Tr. at 21).  After explaining that the correctly calculated range was 110–137 months, the district judge recited several of the 18 U.S.C. § 3553 factors.  Next, the district judge explained that he would not grant a guideline departure or a variance:

> The Court has reviewed [] whether a guideline departure or a variance under Section 3553 factors is warranted in this case.  The Court finds that no such departure or variance is warranted in this case because the circumstances here, in the Court's judgment, are not so exceptional as to form the factual basis for any such departure or variance.

J.A. at 120 (Sent. Tr. at 22).

The district judge then explained his specific considerations in determining Johnson's within-guidelines sentence.  He first explained that he had considered Johnson's "regretfully very long and varied criminal history, including larceny, domestic violence, unarmed robbery."  *Id.*  The district judge concluded that the risk Johnson would "re-offend without major changes in his life [was] high."  *Id.*  The judge also noted that Johnson had committed the instant offense while on parole from a state drug conviction.  The judge added that:

> [D]efendant is in his early fifties, but unfortunately, his longest period of legitimate employment was for approximately one year.  He has four children, possibly five, with at least three different women, has no

relationship with any of them due in major part, in the Court's judgment,
to his repeated stints in prison.

J.A. at 120-21 (Sent. Tr. at 22-23).  The district judge also noted various mitigating factors, including Johnson's "candor, his voluntary statement to the Drug Enforcement Administration, and his acceptance of responsibility, and that he has pled guilty with no written plea agreement."  J.A. at 121 (Sent. Tr. at 23).  Further, the judge noted that Johnson had admitted his addiction problems involving alcohol and cocaine.

The district court concluded that Johnson's voluntary statement "mitigate[d] the sentencing in this case down to the lowest end of the guideline range, which is advisory to the Court."  *Id.*  Explaining that he had considered all of the § 3553 factors and that Johnson would be "adequately deterred and punished by a sentence within the guideline range at its lowest end," the district judge sentenced Johnson to 110 months of imprisonment and five years of supervised release.  *Id.*  Finally, after acknowledging his "discretion to order a concurrent or consecutive sentence to the state sentence," the district judge ordered that the federal sentence run consecutive to Johnson's state sentence for his 2002 conviction for possession of cocaine.  J.A. at 122 (Sent. Tr. at 24).

At the conclusion of the sentencing hearing, Johnson's counsel objected to:  (1) the district court's determination that Johnson was not entitled to a downward adjustment based on a mitigating role pursuant to U.S.S.G. § 3B1.2, and (2) the district court's decision to impose the federal sentence consecutive to the state sentence pursuant to U.S.S.G. § 5G1.3.  This timely appeal followed.

## II.  ANALYSIS

### A.  Impact of *Spears*

In *Spears v. United States*, — S. Ct. —, No. 08-5721, 2009 WL 129044 (Jan. 21, 2009), the Supreme Court held that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines."  *Id.* at *3.  The district court in *Spears* had concluded that the then-applicable Guidelines' 100:1 powder-to-crack-cocaine ratio yielded an excessive

sentence and therefore recalculated the defendant's sentence based on a 20:1 powder-to-crack ratio.  The Eighth Circuit reversed and remanded for resentencing, holding that district courts had no authority to substitute a different ratio for the then-applicable 100:1 powder-to-crack ratio of the Guidelines.  The Supreme Court vacated the Eighth Circuit's judgment and remanded for further consideration in light of *Kimbrough v. United States*, 552 U.S. —, 128 S. Ct. 558 (2007).  *Id.* at *1.  In *Kimbrough*, the Court held that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case."  128 S. Ct. at 575.  On remand, the Eighth Circuit again reversed and remanded for resentencing, holding that the district court impermissibly replaced the 100:1 ratio of the Guidelines with a 20:1 ratio.  The Supreme Court granted certiorari and summarily reversed the judgment of the Eighth Circuit.  *Spears*, 2009 WL 129044, at *1.

The *Spears* Court recognized that district courts may reject and categorically vary from the crack-cocaine Guidelines even in a "mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range."  *Id.* at *4.  The Court noted that the district court's "replacement ratio was based upon two well-reasoned decisions by other courts, which themselves reflected the Sentencing Commission's expert judgment that a 20:1 ratio would be appropriate in a mine-run case."  *Id.* at *3 (citing *United States v. Perry*, 389 F. Supp. 2d 278, 307-08 (D.R.I. 2005); *United States v. Smith*, 359 F. Supp. 2d 771, 781-82 (E.D. Wis. 2005)).  The Court then explained that unless sentencing courts were given the authority to disagree categorically with the Guidelines on policy grounds, there were two possible outcomes:  "Either district courts would treat the Guidelines' policy embodied in the crack-to-powder ratio as mandatory, believing that they are not entitled to vary based on 'categorical' policy disagreements with the Guidelines, or they would continue to vary, masking their categorical policy disagreements as 'individualized determinations.'"  *Id.*  Observing that the former outcome contradicted its holding in *Kimbrough* that district courts have the power to depart from the Guidelines based on policy disagreements, and that the latter represented "institutionalized subterfuge," the Court concluded that

"[n]either is an acceptable sentencing practice." *Id.* The *Spears* Court, therefore, preemptively halted the spread of the overly-restrictive view of *Kimbrough* taken by the Eighth Circuit and "other courts [that] followed [its] course." *Id.* at \*4 ("If the error of those opinions is, as we think, evident, they demonstrate the need to clarify at once the holding of *Kimbrough*.").

In light of *Spears*'s recognition that district courts have authority to develop categorical alternatives to the crack-to-powder ratios contained in the Guidelines based upon policy disagreements with the Guidelines, we vacate Johnson's sentence and remand for resentencing so that the district court may impose a sentence with full awareness of this authority.[1] We note that Johnson was sentenced pursuant to the November 1, 2007, amendments to the Guidelines, which retroactively reduced the base-offense levels for crack cocaine. *See* U.S.S.G. § 2D1.1(c) (2007). However, it is clear that *Spears* applies with equal force to sentencing decisions under the new crack-cocaine Guidelines and that district courts may categorically reject and vary from the new Guidelines based on policy disagreements with those Guidelines.

Finally, we express no opinion on whether the principles articulated in *Spears* may apply outside of the crack-cocaine context to allow district courts to develop categorical alternatives to other sentencing enhancements contained in the Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role." *Spears*, 2009 WL 129044, at \*2 (quoting *Kimbrough*, 128 S. Ct. at 563). We note, however, that this Court has generally heeded the Supreme Court's repeated instructions to afford sentencing judges wide latitude in imposing sentences outside the

---

[1]On the record before us, we have no way of ascertaining whether the district judge would have imposed the same sentence if he had known of his discretion to vary categorically from the crack-cocaine Guidelines based on a policy disagreement. After noting that he was applying the amended crack-cocaine Guidelines which became effective on November 1, 2007, the district judge stated simply:

> So in the Court's judgment, the Court *must* apply the guidelines as of November 1st, and obviously that benefits Mr. Johnson to the effect of two levels on the offense level. It does not change any of the other calculations in the Court's judgment.

J.A. at 102 (Sent. Tr. at 4-5) (emphasis added). These statements suggest that, although the disparity issue was before the court, the district judge was not aware of his power "to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Spears*, 2009 WL 129044, at \*3; *cf. United States v. Medina Casteneda*, 511 F.3d 1246, 1248-49 (9th Cir.) (remanding for resentencing in light of *Kimbrough* where the district court indicated that it could not consider the crack-to-powder disparity in its consideration of the § 3553(a) factors), *cert. denied*, 128 S. Ct. 2946 (2008).

Guidelines—even in mine-run cases—so long as the explanation sufficiently articulates the sentence's appropriateness in relation to the 18 U.S.C. § 3553(a) sentencing factors. *See United States v. White*, —F.3d—, No. 05-6596, 2008 WL 5396246, at *5 (6th Cir. Dec. 24, 2008) (en banc) ("[O]ne of the central points of *Booker*, highlighted by *Kimbrough*[,] is that a district court judge may disagree with the application of the Guidelines to a particular defendant because the Guidelines range is too high or too low to accomplish the purposes set forth in § 3553(a)."); *Duncan v. United States*, —F.3d—, No. 06-5021, 2009 WL 48190, at *1 (6th Cir. Jan. 9, 2009) ("'[A]s a general matter, courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines.'" (quoting *Kimbrough*, 128 S. Ct. at 578)).

## B. Consecutive Sentence

Johnson argues that the district court abused its discretion by ordering that his federal sentence be served consecutive to his undischarged state sentence. At the time Johnson was indicted for the instant offenses in October 2006, he had absconded from a residential-treatment center and was in violation of the terms of parole on his one-to-eight-year, indeterminate state sentence for possession of cocaine. On November 8, 2006, Johnson was arrested on the parole and federal arrest warrants and returned to state prison on January 3, 2007, where he was incarcerated at the time he was sentenced for the present offense on November 7, 2007. At sentencing, Johnson's counsel, citing U.S.S.G. § 5G1.3(c), requested that the court impose the federal sentence concurrent to the state sentence, noting that the relevant offense conduct for the instant offense dated to 2001 and that the state conviction for possession of crack cocaine was in 2002. After setting Johnson's sentence at 110 months, the district judge noted that he "recognize[d] [his] discretion to order a concurrent or consecutive sentence to the state sentence," and then imposed the sentence to run consecutively. J.A. at 122 (Sent. Tr. at 24). Johnson spent an additional five months in state prison before being released on parole again on March 30, 2008, and is now serving his federal sentence.

When a defendant is serving an undischarged prior sentence, the district court may impose a consecutive or concurrent sentence. 18 U.S.C. § 3584. In making this

determination, the sentencing court must consider the factors listed in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3584(b). Accordingly, the sentencing court must consider the recommendations of the Guidelines and any pertinent policy statement. 18 U.S.C. § 3553(a)(4) & (5). The parties agree that the applicable Guideline provision is § 5G1.3(c), which provides that "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c) (policy statement). Application Note 3(A) provides further guidance on achieving a "reasonable incremental punishment":

> (A) Under subsection (c), the court may impose a sentence concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment. In order to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity, the court should consider the following:
>
>   (i) the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));
>
>   (ii) the type (*e.g.*, determinate, indeterminate/parolable) and length of the prior undischarged sentence;
>
>   (iii) the time served on the undischarged sentence and the time likely to be served before release;
>
>   (iv) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
>
>   (v) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

U.S.S.G. § 5G1.3 application note 3(A) (2007). Application Note 3(C) further provides that when a defendant is on federal or state parole or supervised release at the time of the instant offense, "the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." U.S.S.G. § 5G1.3 application note 3(C).

When "a district court has considered the factors listed in 18 U.S.C. § 3553(a) and the applicable guidelines and policy statements in effect at the time of sentencing, the district court's decision whether to impose a concurrent or consecutive sentence pursuant to § 5G1.3 is discretionary." *United States v. Watford*, 468 F.3d 891, 916 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 2876 (2007).  A sentencing court does not abuse its discretion when it "makes generally clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense." *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998), *cert. denied*, 528 U.S. 817 (1999).  However, this is "not unfettered discretion," and "the record on appeal should show that the district court turned its attention to § 5G1.3(c) and the relevant commentary in its determination of whether to impose a concurrent or consecutive sentence." *United States v. Covert*, 117 F.3d 940, 945 (6th Cir.), *cert. denied*, 522 U.S. 880 (1997).

At sentencing, the district court recognized the § 3553 factors.  Given the background of Johnson's request to run his sentence concurrent with the sentence re-imposed by Michigan for the 2002 state court conviction, it appears the district court understood that the state court sentence involved an indeterminate and parolable sentence and understood the maximum length of the prior undischarged sentence.

On remand the district court should show that it has adequately considered § 5G1.3(c) and the relevant commentary in determining whether Johnson's federal sentence should run consecutive to his undischarged state sentence.

**C.  Reasonableness of Sentence**

Johnson challenges the procedural and substantive reasonableness of his sentence.**[2]**  Johnson's principal argument is that the sentence imposed by the district court is substantively unreasonable because the district judge gave undue weight to his

---

**[2]**Though not identified as such by Johnson, two of Johnson's contentions are properly considered arguments that his sentence is procedurally unreasonable.  Specifically, Johnson argues that the district court failed to consider two of the 18 U.S.C. § 3553(a) factors:  (1) "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), and (2) "provid[ing] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *id.* § 3553(a)(2)(D).

character and personal life to the exclusion of the circumstances of the offense and the offense conduct. Because, however, we are remanding in light of *Spears* and for the district court to adequately explain its determination that Johnson's sentence should run consecutively to his undischarged state sentence, it is premature for us to review the reasonableness of the sentence imposed by the district court.

## D.  Criminal History Category

Johnson next argues that the district court erred in failing to grant a downward departure on the ground that a criminal history category of VI substantially overrepresented the seriousness of his criminal history. U.S.S.G. § 4A1.3(b)(1) provides as follows:

> If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. § 4A1.3(b)(1). Johnson acknowledges that trial counsel did not move for a downward departure under § 4A1.3(b)(1) and therefore "the district court did not have an opportunity to rule on a motion" under this provision. Johnson Br. at 18. Nonetheless, Johnson contends that the district court's failure to grant a downward departure on this ground constitutes plain error.

This court generally does "not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir.), *cert. denied*, 129 S. Ct. 469 (2008); *see also United States v. Puckett*, 422 F.3d 340, 344 (6th Cir. 2005), *cert. denied*, 547 U.S. 1122 (2006). At Johnson's sentencing hearing, the district judge expressly declined to grant a departure, saying:

> The Court has reviewed [] whether a guideline departure or a variance under Section 3553 factors is warranted in this case. The Court finds that no such departure or variance is warranted in this case because the

> circumstances here, in the Court's judgment, are not so exceptional as to form the factual basis for any such departure or variance.

J.A. at 120 (Sent. Tr. at 22). The district judge was thus clearly aware of his discretion to depart from the Guidelines range, but declined to do so. Because the district court recognized its discretion, we decline to review the district court's failure to grant a downward departure under U.S.S.G. § 4A1.3(b)(1).

## E. Ineffective Assistance of Counsel

Johnson also argues that he received ineffective assistance of counsel because his attorney at sentencing failed to move for a downward departure pursuant to U.S.S.G. § 5K2.0, based on Johnson's exceptional cooperation and acceptance of responsibility. An ineffective-assistance-of-counsel claim is generally not considered on direct appeal because the record of trial counsel's deficient performance is not fully developed. *United States v. DeJohn*, 368 F.3d 533, 548 (6th Cir.), *cert. denied*, 543 U.S. 988 (2004); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("In light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance."). Here, we conclude that the record is inadequate because the precise nature and scope of Johnson's assistance to government authorities is unclear in the record on appeal. Accordingly, we decline to consider Johnson's ineffective-assistance claim.

## F. Consideration of Exceptional Cooperation and Acceptance of Responsibility

Finally, Johnson argues that the district court erred by failing to articulate whether it considered Johnson's exceptional cooperation and acceptance of responsibility—as discussed above—in declining to depart downward from the Guideline range. Essentially, Johnson is arguing that the district judge should have granted a downward departure under § 5K2.0 for Johnson's extraordinary cooperation and acceptance of responsibility. Again, however, this court generally does "not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *Santillana*, 540 F.3d at 431. Because the district judge demonstrated that

he was aware of his discretion to grant a departure from the Guidelines range, we decline to review this issue.

### III. CONCLUSION

For the reasons explained above, we **VACATE** Johnson's sentence and **REMAND** for resentencing.