**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0160n.06
Filed: February 24, 2009

**Case No. 07-5714**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | MIDDLE DISTRICT OF |
| v. | ) | TENNESSEE |
| | ) | |
| EDWARD PORTER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: BATCHELDER, CLAY, and SUTTON, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.** Edward Porter appeals his sentence, arguing that the district court miscalculated the advisory guideline range and that the sentence imposed was otherwise unreasonable. For the reasons that follow, we AFFIRM the district court.

**I.**

Tennessee state police set up a controlled buy, during which Porter sold 250.9 grams of crack cocaine (i.e., cocaine base with a purity of 52-53%) to a confidential informant for $6,000 in marked bills. Police apprehended Porter, the federal grand jury indicted him for a violation of 21 U.S.C. § 841(a)(1), Porter pled guilty, and the district court ordered a presentence report (PSR).

The PSR set Porter's base offense level at 34, based on the Drug Quantity Table in the 2006 edition of U.S.S.G. § 2D1.1(c)(3) ("At least 150 G but less than 500 G of Cocaine Base"). The PSR decreased Porter's base offense level by three levels for acceptance of responsibility, resulting in a

Total Offense Level of 31. The PSR tabulated ten criminal history points,[1] which translated to a Criminal History Category of V. The advisory guideline calculation was 168 to 210 months.

Upon reviewing the PSR, Porter protested that three of the arrests listed in the "other arrests" section should not have been included because the charges had been dismissed. The probation department replied that the "other arrests" section "provides the [c]ourt with information about contact with law enforcement authorities," and, pursuant to 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."), this information was properly included. Porter also argued that Special Condition No. Six ("The defendant shall abstain from consumption of alcohol while on supervised release.") was "overly restrictive." But, the probation department explained that "Mr. Porter [had] candidly admitted to having abused alcohol over the years, as well as having difficulty stopping [his] use of alcohol." The probation department declined to make any changes in the PSR.

In a pre-sentence filing entitled "Defendant's Position With Respect To Sentencing Factors," Porter argued to the district court that a 1995 conviction for simple possession, which had counted for one criminal history point, should not have been counted, inasmuch as he had been sentenced to "expungeable probation" and pursuant to U.S.S.G. § 4A1.2(j), expunged diversionary dispositions are not counted. Porter conceded that the charge was never formally expunged from his record, but argued that the charge should be excluded nonetheless, because he had satisfied the prerequisites for expunction. Porter also reasserted his objection to the dismissed charges in the "other arrests"

---

[1]This had five components: (1) Simple Assault - Guilty Plea - 1 point; (2) Simple Possession - Guilty Plea - 1; (3) Possession with intent to Sell over 0.5 grams of Cocaine - Guilty Plea - 3; (4) Facilitation of Possession of Cocaine - Guilty Plea - 3; (5) Instant Offense Less than Two Years after Release from Prison - 2; Total = 10 points.

2

section of the PSR on the basis that their inclusion was unduly prejudicial, in violation of due process. In his Sentencing Memorandum, Porter argued that the advisory guidelines calculated in the PSR were unduly harsh due to their use of the 100:1 crack-to-cocaine ratio and, therefore, the court should sentence him to the statutory minimum of 120 months. The government did not reply.

At the sentencing hearing, Porter raised those same three arguments. He argued that the court should not count the simple possession conviction as a criminal history point because it could have been expunged. The government replied that "the simple fact is [that] the records of the Davidson County court indicate that the case is still on its books and it was not expunged." The district court rejected Porter's first argument. Next, Porter reiterated that the court should not consider the dismissed charges in the "other arrests" section of the PSR. The government replied that "the court has an obligation to consider all the facts that . . . it may be able to obtain pertaining to the defendant." The court rejected Porter's second argument as well. Finally, Porter argued that the court should reduce his total offense level by two levels, based on the Sentencing Commission's acknowledged concern with the 100:1 crack-to-cocaine ratio. In urging this two-level reduction, Porter's attorney said:

> Your Honor, the two level reduction gets Mr. Porter to 140 to 175 months as a criminal history category V, and we are asking that Your Honor give him that reduction in recognition of the sentencing commission's attempt — and they have only called it a partial attempt to address this disparity between crack and powder cocaine sentences. So we would ask for that two level decrease.

On the whole, however, Porter's attorney argued for the statutory minimum sentence of 120 months as "sufficient but not greater than necessary to satisfy the statutory goals of Section 3553(a)."

The government opposed the two-level decrease and urged the court to instead consider all of the § 3553 factors, including Porter's history as a repeat offender and the nature of the crime, and

3

impose a sentence within the advisory range of 168 to 210 months. The government argued:

> Your Honor, the argument that the court ought to initially drop the offense level by two levels because of the fact that the [S]entencing [C]ommission has recommended a change in the ratio between powder cocaine and crack cocaine is by no means a certainty that [such a change is] going to go into effect in November.
>
> As the court will recall, this is not the first time that the [C]ommission has made recommendations to amend that particular ratio, and the Congress has [previously] seen fit to . . . leave it as it is.
>
> So, I'm not trying to make an argument whether the ratio ought to stay the same or not, but it's certainly not certain that the ratio is going to change.

The court began its sentencing decision by noting that, under a then-pending amendment to the Guidelines for crack-cocaine offenses, Porter's advisory range would be 140 to 175 months, and explained:

> I'm going to grant the two level reduction[,] making the [advisory] guidelines [range] 140 to 175 [months]. I agree with the proposed - - I think the proposed [G]uideline change is - - would be an appropriate change.
>
> And taking into consideration the criminal history of the defendant . . . , the fact that he has two drug felonies, that he's an intelligent person who has not learned his lesson, [and that he has] put his family in hurt for what he's done, . . . I think that a fair, just and reasonable sentence in this case would be a sentence of 144 months.

Porter obtained new counsel and filed this appeal.

**II.**

On appeal, Porter argues that the 144-month sentence is procedurally unreasonable because the district court did not expressly consider the § 3553 factors. The government responds that if "the sentencing court addressed the relevant factors in reaching its conclusion, [then it] need not explicitly consider each of the § 3553(a) factors or engage in a rote listing or some other ritualistic incantation of the factors." *See United States v. Kirchhof*, 505 F.3d 409, 413 (6th Cir. 2007). And, "[t]he district judge is only under a more rigorous duty to make explicit its consideration of the factors

when a defendant makes a particular argument, [or] when a factor is particularly relevant." *United States v. Simmons*, 501 F.3d 620, 625 (6th Cir. 2007). Porter's counsel at sentencing made no arguments that necessitated express discussion of the § 3553 factors, and we find that the court discussed the factors that were particularly relevant. We find no merit to Porter's argument.

Next, Porter argues that his 1995 conviction for simple possession should be considered as expunged (i.e., not counted towards his cumulative criminal history points), even though it was not actually expunged. The government replies that, in plain terms, "not expunged" means "not expunged" and, therefore, the offense is to be counted. We reject Porter's argument.

Finally, Porter argues that the district court "failed to fully explain the rationale for the two-level reduction," and "erroneously believed it could only reduce the advisory Guideline range by two levels based on the new proposed modification to § 2D1.1(c)." This is at once both disingenuous and insupportable. At the sentencing hearing, there was no mystery to the "rationale" for the two-level reduction — Porter's attorney identified, argued for, and obtained the two-level reduction on the basis that the Sentencing Commission had proposed it as a forthcoming change to the Guidelines, intended to take effect some six months hence.[2] But, there is no support for the offsetting claim that the court felt constrained to adhere to this proposed version of § 2D1.1(c) and, consequently, grant only a two-level reduction. Porter's counsel had argued that even the Commission had "called it [only] a partial attempt to address this disparity between crack and powder cocaine sentences," while the government had responded that the proposed modification was "by no means a certainty."

Based on our careful reading of the transcript, we conclude that, in announcing its belief that

---

[2]The sentencing hearing was held in May 2007 and Porter's counsel, while arguing for the reduction, had acknowledged that the proposed amendment would not take effect until November of that year.

"the proposed [G]uideline change . . . would be an appropriate change," the court acknowledged that it was not bound to either the existing or the proposed version of the Guidelines, but was instead acting on its own view of the Guidelines' crack-to-cocain disparity. That is, we find that the court exercised its discretion to impose a below-guidelines sentence, based on its disagreement with the existing Guideline provision (i.e., the 100:1 crack-to-cocaine ratio) and — upon considering Porter's argument and the government's counter-argument — its general agreement with the Commission's proposed modification to that Guideline provision.

In closing, we note that the Supreme Court has just this past month spoken again on this Guidelines' crack-to-cocaine disparity. *See Spears v. United States*, 555 U.S. --, No. 08-5721, 2009 WL 129044 (Jan. 21, 2009) (clarifying *Kimbrough v. United States*, 552 U.S. --, 128 S. Ct. 558 (2007)). And, we have also spoken to this issue — we heard argument in a case on point the day after *Spears* issued and filed an opinion, applying *Spears*, just four days later. *See United States v. Johnson*, -- F.3d --, 2009 WL 161733 (Jan. 26. 2009) (argued Jan. 22, 2009). Needless to say, Porter's appellate counsel did not have the benefit of *Spears* or *Johnson* when he argued this case back on October 29, 2008, but Porter is nonetheless entitled to the benefit of those cases and their reasoning, so long as his case is pending on direct appeal. *See Griffith v. Kentucky*, 479 U.S. 314, 322 (1987). Therefore, we pause to consider Porter's situation in light of those two cases.

*Spears* is a *per curiam*, summary reversal, with three justices dissenting, in which the Court held, or rather "clarif[ied,] that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Spears*, 2009 WL 129044 at *3. That certainly appears to be what the district court did in this case — even without the benefit of *Spears* — and we have endorsed the court's decision to do so.

In *Johnson*, 2009 WL 161733 at *1, we held that "[b]ecause the district court sentenced Johnson without the benefit of *Spears*," remand was necessary "to give the district court an opportunity to impose a sentence with full recognition of its authority to reject and vary from the crack-cocaine Guidelines based solely on a policy disagreement with those Guidelines." So, the question before us is whether we must remand the present case for this same reason.

In concluding that remand is not necessary in this case, we find that the critical aspect of *Johnson* is not so much its holding as how we got there. Importantly, we did not merely assume in *Johnson* that the district court lacked "full awareness of this authority," *id* at *5, but we instead relied on the district court's express statements at the sentencing hearing: "'So in the [c]ourt's judgment, the [c]ourt *must* apply the guidelines as of November 1st, and obviously that benefits Mr. Johnson to the effect of two levels on the offense level. It does not change any of the other calculations in the [c]ourt's judgment.'" *Id*. at *5 n.1 (quoting the district court sentencing transcript; emphasis included in the *Johnson* opinion). "These statements suggest," we went on to explain, "that, although the disparity issue was before the court, the district judge was not aware of his power to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *Id*. (quotation marks omitted). Thus, "[o]n the record [that was] before us, we ha[d] no way of ascertaining whether the district judge would have imposed the same sentence if he had known of his discretion to vary categorically from the crack-cocaine Guidelines based on a policy disagreement." *Id*. The situation in Porter's case is virtually the exact opposite.

In sentencing Porter, the district court never asserted that it *must* do anything. Instead, the court listened to each side's argument and exercised its discretion to disagree with the existing Guideline provision and agree with the Commission's proposed modification to that provision. The

court's statements suggest that the court was fully aware of its "power to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." *See Johnson* at *5 n.1 (quoting *Spears*). And, on the record before us, we have no basis to assume that the district court was unaware of its authority or would have imposed a different sentence post *Spears*. Rather, the district court explicitly explained that a "fair, just and reasoned sentence," in light of all of Porter's circumstances was 144 months of incarceration.

## III.

For the foregoing reasons, we **AFFIRM** the district court's judgment and sentence.

**CLAY, Circuit Judge, concurring in part and dissenting in part.** I agree that the district court properly rejected Porter's argument that his prior conviction for simple possession should be considered expunged. However, after close consideration of the Supreme Court's recent decision in *Spears v. United States*, ___ U.S. ___ , No. 08-5721, 2009 U.S. LEXIS 864 (Jan. 21, 2009), and this Court's decision in *United States v. Johnson*, ___ F.3d. ___ , No. 07-2447, 2009 U.S. App. LEXIS 1400 (6th Cir. Jan. 26, 2009), I do not join the majority in concluding that the district court fully recognized its authority to depart from the advisory crack cocaine Guidelines. Consequently, I would vacate Porter's sentence and remand for resentencing in light of *Spears*.

## I.

Recently, in *Spears v. United States*, the Supreme Court held that "district courts are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines." 2009 U.S. LEXIS 864, at *7-8. Vacating a judgment of the Eighth Circuit in which a panel of that court held that district courts had no authority to substitute a different ratio for the then-applicable 100:1 crack-to-powder ratio of the Guidelines, the *Spears* Court explained that "[a] sentencing judge who is given the power to reject the disparity created by the crack-to-powder ratio must also possess the power to apply a different ratio which, in his judgment, corrects the disparity." *Id.* After discussing the Court's prior holding in *Kimbrough v. United States*, 552 U.S. ___ , 128 S. Ct. 558 (2007), the *Spears* Court clarified that a district court's authority to categorically reject the crack cocaine Guidelines must apply even in "a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range." 2009 U.S. LEXIS 864, at *10.

In *United States v. Johnson*, we noted that "[t]he *Spears* Court . . . preemptively halted the

9

spread of the overly-restrictive view of *Kimbrough* taken by the Eighth Circuit and 'other courts [that] followed [its] course.'" 2009 U.S. App. LEXIS 1400, at *13. Applying *Spears*, we found that on the record before the Court, there was "no way of ascertaining whether the district judge would have imposed the same sentence if he had known of his discretion to vary categorically from the crack-cocaine Guidelines based on a policy disagreement." *Id.* at *14 n.1. Consequently, we held that "[i]n light of *Spears's* recognition that district courts have authority to develop categorical alternatives to the crack-to-powder ratios contained in the Guidelines based upon policy disagreements with the Guidelines, we vacate Johnson's sentence and remanded for resentencing so the district court could 'impose a sentence with full awareness of [its] authority.'" *Id.* at *13-14.

II.

Under *Spears* and *Johnson*, a remand is also warranted in the instant case. At sentencing, Porter argued that the then-existing crack cocaine Guidelines that used a 100:1 crack-to-powder ratio created an unwarranted disparity between crack and powder cocaine sentences, and requested that the district court reduce his offense level in light of a proposed amendment to U.S.S.G. § 2D1.1. The government argued against the reduction because the proposed change had not yet been adopted. The court stated, "I'm going to grant the two level reduction making the guidelines 140 to 175. I agree with the proposed - - I think the proposed guideline change is - - would be an appropriate change." (Joint Appendix ("J.A.") at 29.) Porter objected to the sentence, arguing that the reduction was not large enough, and reiterated that argument on appeal.

To be sure, the district court did state that it found the proposed two-level Guideline change to be an "appropriate change." However, the statement was made within the context of discussing the proposed amendments to the crack cocaine Guidelines. There is no indication that the court was

10

aware of its power, in a "mine-run case" such as this, *see Spears*, 2009 U.S. LEXIS 864, at *10, to grant a reduction beyond the proposed amendments based on its own policy disagreement with the ratio set forth in the Guidelines.[1]  Consequently, on the record before us, as in *Johnson*, there is simply "no way of ascertaining whether the district judge would have imposed the same sentence if he had known of his discretion to vary categorically from the crack-cocaine Guidelines based on a policy disagreement." *Id.* at *14 n.1.  The question is one of degree: while the district judge recognized that it had the discretion to depart from the Guidelines by considering individualized factors and applying the proposed two-level reduction to Porter's offense level, this Court cannot reasonably conclude that the sentencing court was fully aware that it had the authority to deviate from the crack-to-powder ratio and apply its own ratio, as did the sentencing court in *Spears*.

To the contrary, we can fairly assume that the district court did *not* feel free to vary categorically from the Guidelines based on a disagreement with Congress' policy decisions, because this case was decided prior to *Kimbrough*,[2] and pre-*Kimbrough* precedent in this circuit explicitly forbade the court from doing so.  *See, e.g., United States v. Smith*, 252 F. App'x 20, 29 (6th Cir. 2007) ("[T]he district court properly did *not* address the issue of the sentencing disparity between powder cocaine and crack cocaine . . . . [A] sentencing court may not reject Congress's policy decisions." (emphasis in original)), *vacated and remanded by Townsend v. United States*, 128 S. Ct. 2485 (2008)*; United States v. Funk*, 477 F.3d 421, 430 (6th Cir. 2007) ("[A] district court making sentencing determinations may not implicitly reject Congress's policy decision to prescribe harsher

---

[1]What little evidence does exist in the sentencing record supports a conclusion that the court was receptive to an argument that the disparity between crack and powder cocaine sentences was unwarranted, but that it limited its analysis of the matter to the proposed amendment.

[2]The sentencing hearing in the instant case was conducted on May 11, 2007, while *Kimbrough* was decided on December 10, 2007.

penalties for career offenders by ignoring or outright rejecting a defendant's status as a career criminal offender."); *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006) ("A sentence may be substantively unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission." (citation omitted)).

The majority opinion emphasizes that in *Johnson*, the district court had stated that "in the court's judgment, the [c]ourt *must* apply the guidelines as of November 1st, and obviously that benefits Mr. Johnson to the effect of two levels on the offense level." Slip op. at 7 (quoting *Johnson, 2009 U.S. App. LEXIS 1400, at \*14 n.1 (emphasis in original)). The use of the term "must" does not carry the significance that the majority assigns to it. It appears that the district court in *Johnson* was stating, in the context of noting that amended crack cocaine Guidelines had come into effect a mere six days earlier, that it "must" apply the two-level offense level reduction to foreclose an argument that the court should *decline* to apply such a reduction. There is no indication that the district court in *Johnson*, as compared to the district court in the instant case, was any more or less aware of its discretion to go *beyond* a two-level reduction based on a categorical disagreement with the ratio set forth in the Guidelines.

As the majority opinion properly notes, "Porter's appellate counsel did not have the benefit of *Spears* or *Johnson* when he argued this case back on October 29, 2008, but Porter is nonetheless entitled to the benefit of those cases and their reasoning, so long as his case is pending on direct appeal." Slip. op. at 6 (citation omitted). In such a case, where the sentencing record is at best ambiguous with respect to the district court's awareness of the scope of its authority and where the case was decided at a time when this circuit had explicitly advised district courts *against* expressing their views of the crack cocaine Guidelines, a remand to the district court is required. A remand

12

would not mandate a reduction in sentence, it would merely give the district court the option of imposing its original sentence or reducing the sentence light of *Spears*.[3] The critical point is that the district court's decision would be made "with full awareness of [its] authority." *See Johnson*, 2009 U.S. App. LEXIS 1400, at *13-14.

### III.

For the foregoing reasons, I would vacate Porter's sentence and remand for resentencing in light of *Spears*. Therefore, I respectfully dissent.

---

[3]The pool of potential remands would be limited to cases that were decided before *Kimbrough*, when this Court had advised against the expression of policy disagreements with the Sentencing Commission, but that are still pending on direct appeal.