NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0241n.06

No. 08-4608

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Apr 20, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA, )
)
Plaintiff-Appellee, )
)
v. ) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR
ZAID NASSAR, ) THE SOUTHERN DISTRICT OF
) OHIO
Defendant-Appellant. )
)
)
)

Before: MARTIN, CLAY, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Zaid Nassar pled guilty to conspiring to distribute oxycodone. The district court sentenced him to 57 months' imprisonment. Nassar argues that the court erroneously treated the United States Sentencing Guidelines' oxycodone-to-marijuana conversion ratio as mandatory and that his sentence is substantively unreasonable. We reject his arguments, and affirm.

I.

On or about May 20, 2008, law-enforcement officers executed search warrants at two residences associated with Nassar. During one of the searches, an FBI agent interviewed Nassar, who was present at the time. Nassar admitted that he had participated in a conspiracy to distribute approximately 4200 tablets of OxyContin, each containing 80 milligrams of oxycodone.

The government filed a complaint against Nassar, charging him with conspiring to distribute oxycodone in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). Nassar waived indictment and pled guilty. The plea agreement specified that the government would recommend a base offense level of 32. That figure was derived from the Guidelines' Drug Equivalency and Drug Quantity Tables, which provide ratios to convert drugs to equivalent quantities of marijuana and assign offense levels based on those quantities. *See* U.S.S.G. § 2D1.1 application n.10 (2008). For most drugs, conversion is performed using the aggregate weight of the drug and everything it is mixed with, *e.g.*, the weight of each pill. Prior to 2003, oxycodone was converted using this aggregate approach, with each gram of oxycodone-containing substance equaling 500 grams of marijuana. But in 2003, the Sentencing Commission changed both the measurement method and the conversion ratio for oxycodone. *See* Synopsis of Amendment, U.S.S.G. amend. 657 (2003). Now, oxycodone is converted using its actual pure weight—which can vary based on pill strength and formulation—at a ratio of one gram of oxycodone to 6700 grams of marijuana. *Id.* Nassar was responsible for 4200 pills at 80 milligrams each, which converts to 2521.2 kilograms of marijuana. The Drug Quantity Table accordingly provided a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4).

The presentence investigation report recommended a two-level increase because the officers found a firearm during the search. The report also recommended a two-level decrease for Nassar's acceptance of responsibility and a one-level decrease for his timely guilty plea, calculating his total offense level at 31. The report placed Nassar in criminal-history category II.

At sentencing, the district court sustained Nassar's objection to the firearm adjustment and granted the government's § 5K1.1 motion for a downward departure for substantial assistance.

Accordingly, the court assigned Nassar a total offense level of 25. The court also agreed with Nassar that criminal-history category II substantially overstated the seriousness of his criminal history and departed downward to category I. The resulting sentencing range was 57 to 71 months. The court then sentenced Nassar to 57 months' imprisonment. This appeal followed.

## II.

## A.

Nassar argues that the district court failed to understand its authority to disagree with the Guidelines. He relies on *Kimbrough v. United States*, 552 U.S. 85 (2007), for the proposition that a district court has the authority to vary from a Guidelines sentencing range if the court concludes that a within-range sentence would be greater than necessary to achieve the sentencing purposes laid out in 18 U.S.C. § 3553(a). *See Kimbrough*, 552 U.S. at 109-10; *see also Spears v. United States*, ___ U.S. ___, 129 S. Ct. 840, 843-44 (2009) ("[D]istrict courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines"). Nassar contends that the court erroneously concluded that *Kimbrough* applied only to the crack-cocaine Guidelines and that it consequently treated the oxycodone conversion ratio as mandatory. He asks us to vacate his sentence and remand for resentencing with instructions that the ratio is merely advisory.

We review a criminal sentence for procedural and substantive reasonableness, under an abuse-of-discretion standard. *See Gall v. United States*, 552 U.S. 38, 51 (2007). One way a district court can commit procedural error is to treat the Guidelines as mandatory in a given case. *See id.* After *Kimbrough* and *Spears*, a district court also errs if it fails to recognize its authority to

categorically disagree, in every case, with the crack-cocaine Guidelines. *See Kimbrough*, 552 U.S. at 109-10; *Spears*, 129 S. Ct. at 843-44. We have not yet decided whether the categorical-disagreement authority extends beyond the crack-cocaine Guidelines, *see United States v. Johnson*, 553 F.3d 990, 996 (6th Cir. 2009), but the district court here did not treat the oxycodone conversion ratio as mandatory, so we leave that question for another day.

In order to justify a remand based on *Kimbrough*, Nassar must show more than "mere conjecture that the district court may have felt constrained" by the Guidelines. *United States v. Guest*, 564 F.3d 777, 781 (6th Cir. 2009). Rather, "there should be some indication of error in the record justifying remand." *Id.* at 779; *cf. Johnson*, 553 F.3d at 996 n.1 (district court stated that it "*must* apply the Guidelines") (emphasis in original).

We cannot find any sign that the court considered itself bound by the Guidelines here. *Cf. Guest*, 564 F.3d at 780 (finding "no indication in the record that the district court thought its ability to vary the sentence . . . was in any way constrained"). Instead, the court repeatedly stated that the Guidelines were advisory. *See, e.g.*, Sent'g Tr. 58 ("I'm not bound by the sentencing guidelines").

Nassar chiefly relies on two references the district court made to *Kimbrough* having involved crack cocaine rather than oxycodone. These references, Nassar says, show that the court thought *Kimbrough* was limited to the crack-cocaine context. We disagree. Those references occurred during an extensive discussion—spanning more than 30 pages—of whether the Guidelines' oxycodone conversion ratio should apply here. The extent of argument alone undermines the conclusion that the court felt itself bound by the Guidelines. Moreover, the transcript shows that the court was considering whether it *should*—not *could*—use a different conversion ratio. For example,

the court at one point asked Nassar if he wished to provide any "more information so that I can make a legitimate decision in this case as to. . . how [the Sentencing Commission] handled the amendment and the determination of the 6700?"  Sent'g Tr. 52.

As to the question of whether the district court *should* vary from the Guidelines' ratio, the fact that *Kimbrough* and its progeny involved crack cocaine is significant.  Those cases followed extensive public criticism—including from the Commission itself—of the crack-powder sentencing disparity.  Nassar has not identified similar criticism of the oxycodone conversion ratio.  In addition, unlike the crack-cocaine Guidelines, which "do not exemplify the Commission's exercise of its characteristic institutional role" because they were derived from statutory minimum sentences rather than "empirical data and national experience," *see Kimbrough*, 552 U.S. at 109, the Commission's amendment of the oxycodone conversion ratio was an express response to "proportionality issues in the sentencing of oxycodone trafficking offenses[,]" *see* U.S.S.G. amend. 657.  We cannot fault the district court for considering distinctions like these.  And when read in this context, it becomes clear that the court's statement, "I don't know of any unit in our society that has more knowledge of sentencing than the Sentencing Commission," merely reflects the court's skepticism towards Nassar's argument that the amended ratio was arbitrary.  *See* Sent'g Tr. 17.

At bottom, the district court did not treat the Guidelines as mandatory; it simply agreed with them.  There is no error in that.

### B.

Nassar also challenges the substantive reasonableness of his sentence.  To be substantively reasonable, a sentence must be proportionate to the seriousness of the offense and sufficient, but not

greater than necessary, to comply with the purposes of § 3553(a). *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008). We may presume that a within-Guidelines-range sentence is reasonable. *Gall*, 552 U.S. at 51.

Nassar argues that his sentence is excessive because he did not have an extensive criminal history, was fully cooperative upon arrest, and has a family that relies upon him for support. The district court expressly considered each of these factors, however, and his sentence is significantly shorter as a result. The court granted Nassar a downward departure because it agreed that his criminal-history category overstated his actual criminal history. The court also decreased his total offense level by seven points to reflect his cooperation—namely, his acceptance of responsibility, his timely guilty plea, and his assistance to the government. Absent those adjustments, Nassar's sentencing range would have been 135 to 168 months rather than 57 to 71 months. As to his family, the record suggests that his family supports him rather than the reverse; nevertheless, the district court specifically considered some of his family characteristics in his favor. In light of the seriousness of Nassar's offense, we think the district court gave him every benefit of the doubt when it sentenced him at the bottom of an already-reduced sentencing range.

Nassar has failed to show that his sentence is either procedurally or substantively unreasonable. The district court's judgment is affirmed.