NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0166n.06

No. 08-2175

**FILED**
**Mar 17, 2010**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GRADIS L. JONES, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant–Appellant. | ) | |
| | ) | |

Before: MARTIN and GIBBONS, Circuit Judges; MARBLEY, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant–appellant Gradis L. Jones pled

guilty to being a felon in possession of a firearm and was sentenced to 72 months imprisonment. On

appeal, he now argues that the district court erred by increasing his offense level four points for his

possessing the weapon in connection with another felony and that the sentence was substantively

unreasonable. For the reasons that follow, we affirm Jones's sentence.

I.

On May 3, 2005, Gradis Jones dialed 911 to report a kidnapping. He claimed that he and a

woman named Teresa Mathis had been forced into a vehicle at gunpoint upon leaving their Lansing,

Michigan, hotel room earlier that afternoon. The gunman had allegedly driven Jones and Mathis to

Jones's residence where they met another armed perpetrator at his front door. According to Jones,

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio,
sitting by designation.

the two gunmen then forced him to lie on the floor of his home while they took Mathis to the basement. Jones claimed that, after hearing what sounded like gunfire, he managed to escape his captors and ran approximately two miles to a 7-11 store and called the police.

Officers met him at the 7-11 and accompanied Jones back to his residence. When they arrived, however, the house was filling with smoke thick enough to prevent them from checking on Mathis's welfare. The Lansing Fire Department was called and they were able to extinguish the fire. Mathis's body was subsequently found in the basement bedroom.

After the police obtained a warrant, crime scene investigators searched Jones's residence and discovered, among other things, two handguns, three shotguns, an assortment of firearm ammunition, an unspecified quantity of marijuana, marijuana growing equipment and paraphernalia, and materials used to weigh and package large quantities of drugs. None of the weapons was registered to Jones and three of the weapons had been reported stolen. During his interview with the police, Jones admitted that, about a week prior to Mathis's death, approximately seven pounds of marijuana and a small quantity of powder cocaine that he kept at Mathis's apartment had been stolen. As a result, he said, he became worried that someone was out to get him and had purchased a plane ticket to California to depart the day after the kidnapping. Jones also told police that he sold pound quantities of marijuana to individuals who contacted him via telephone. The record does not reflect that Jones immediately faced any criminal charges resulting from the May 3, 2005, incident.

In September 2006, Jones was arrested in Toledo, Ohio, on a child support warrant from the Michigan Attorney General's Office. While being extradited, Jones waived his *Miranda* rights and explained that he had moved to San Diego after Mathis's murder because he feared retribution from

her family, who thought he was responsible for her death. Jones stated that two of the shotguns found in his house in 2005 belonged to him, but he denied knowledge of one of the handguns. He also provided more details about his marijuana trafficking. He disclosed that he would have marijuana shipped to him or he would fly to San Diego to retrieve it himself. He admitted that he had approximately ten pounds of marijuana at his house at the time of the kidnapping and presumed that it had been stolen by whomever was responsible for the murder. Agents with the Bureau of Alcohol, Tobacco, and Firearms subsequently determined that Jones had previously been convicted in Michigan of delivery and manufacture of marijuana and failure to pay child support and that his right to possess firearms had not been restored. On February 21, 2007, Jones was indicted for being a felon in possession of a firearm, under 18 U.S.C. § 922(g)(1) on May 3, 2005. Jones pled guilty on May 13, 2008. At the sentencing hearing, he further admitted that he had purchased the three shotguns off the street for $100 because he felt that he needed protection.

The sentencing hearing was held on August 29, 2008. The Presentence Investigation Report ("PSR") calculated Jones's total offense level to be 25 and his criminal history category to be II, resulting in a Guidelines range of 63 to 78 months. The offense level calculation included a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(A) because of the prior marijuana conviction; a two-point enhancement because the offense involved between three and seven firearms; a second two-point enhancement because some of the firearms were stolen; a four-point enhancement under U.S.S.G. § 2K2.1(b)(6) because Jones possessed the firearms in connection with another felony, specifically possession of marijuana with intent to distribute; and a three-point downward adjustment for acceptance of responsibility. At the sentencing hearing, Jones did not object to the findings in

the PSR and the district court accepted them. The court considered Jones's personal and criminal history and the nature of the offense, and, with the intention to "provide some kind of a sentence that provides an adequate deterrence to you and protects the public, but at the same time provides you with some medical, educational, and correctional treatment," sentenced Jones to 72 months imprisonment, three years of supervised release, and 200 hours of community service. When the district court asked Jones's counsel whether she had "[a]ny legal objection to the sentence imposed," counsel replied that she did not.

## II.

## A.

Because Jones did not object at sentencing, we review any procedural issue related to his sentence for plain error. *United States v. Bailey*, 488 F.3d 363, 367–68 (6th Cir. 2007). Under that standard, Jones must show: "(1) an error, (2) that is plain, and (3) that affects his fundamental rights." *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009) (citing *United States v. Martin*, 520 F.3d 656, 658 (6th Cir. 2008)).

On appeal, Jones first claims that the district court erred in enhancing his offense level by four points under § 2K2.1(b)(6), which applies "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." The government can show that a defendant possessed a firearm "in connection with" another felony "[s]o long as the government proves by a preponderance of the evidence that the firearm served some purpose with respect to the felonious conduct." *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) (citations and internal quotation marks omitted). "[P]ossession of firearms that is merely coincidental to the underlying

felony offense is insufficient to support the application of § 2K2.1." *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001). We have adopted the "fortress theory" for analyzing whether possession was maintained "in connection with" another felony. "That theory holds that 'if it appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used "during and in relation to" a drug trafficking crime.'" *United States v. Hardin*, 248 F.3d 489, 500 (6th Cir. 2001) (quoting *United States v. Covert*, 117 F.3d 940, 947 n.9 (6th Cir. 1997) (quoting *United States v. Henry*, 878 F.2d 937, 944 (6th Cir. 1989))). As we recently found, the fortress theory can apply where guns were "conveniently made available to facilitate the manufacture of marijuana, protect the product, and embolden [the defendant]." *United States v. Angel*, 576 F.3d 318, 323 (6th Cir. 2009).

Jones makes three sub-claims. First, he argues that the court improperly applied the 2008 version of the Guidelines when calculating his sentence, thus violating the *ex post facto* clause because under the 2005 version, in force at the time of the offense, he would not have been subject to a four-point enhancement. *See* U.S.S.G. § 1B1.11(b)(1) ("If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed."). Jones argues that he only received the enhancement because of an application note, added in 2006, that defines "in connection with," in the case of drug trafficking offenses to include situations "in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1 application n.14.

The government argues that since *United States v. Booker*, 543 U.S. 220 (2005), rendered the Guidelines advisory, the *ex post facto* clause is no longer implicated by revisions to the Guidelines. *Cf. United States v. Duane*, 533 F.3d 441, 446 (6th Cir. 2008) (declining to read a previous Sixth Circuit case, *United States v. Barton*, 455 F.3d 649 (6th Cir. 2006), "as announcing . . . a broad rule" such as "a change to the Guidelines does not raise an *ex post facto* concern").

Regardless of whether *Booker* has obviated the application of the *ex post facto* clause to changes in the Guidelines, Jones's argument fails because, in fact, there was no substantive change in the Guidelines between 2005 and 2008.[1]  The commission history explained that the application note added in 2006 was merely codifying language from *Smith v. United States*, 508 U.S. 223 (1993). *Smith* defined the use of "in relation to" in 18 U.S.C. § 924(c)(1), which provides a sentencing enhancement when firearms are used in relation to drug trafficking crimes; the Sentencing Committee adopted this definition for § 2K2.1(b)(6) because a consensus of circuits had already analogized the two.  *See Hardin*, 248 F.3d at 497–98.  It is clear our jurisprudence did not change between 2005 and 2008 either.  *Hardin*, which applied the fortress theory to § 2K2.1, was decided in 2001—well before either the offense in this case or the 2006 amendments on which Jones bases his theory.  *See id.*  There was no change in the applicable Sixth Circuit law between the time of the offense and the time of sentencing, so there can be no *ex post facto* violation.

Next, Jones argues that the court should not have applied the four-point enhancement under U.S.S.G. § 2K2.1 because he did not actually possess the firearms "in connection with" another felony offense.  Jones argues that there was no information in the PSR detailing where the guns were

---

[1]In the 2005 version of the Guidelines, § 2K2.1(b)(6) was numbered at subsection (b)(5).

found in relation to the marijuana or that he had bought or sold marijuana in the time after he purchased the shotguns. We note again that Jones failed to object to the court's application of § 2K2.1(b)(6) at sentencing. Even so, Jones admitted to facts sufficient to support a finding that he possessed three shotguns to facilitate his drug trafficking activities. He claimed that he bought the shotguns for protection because he thought someone was out to get him after he had drugs stolen from Mathis's apartment. There was ample evidence of marijuana growing and distributing found at his residence after the fire. It certainly was not plain error for the district court to apply the enhancement as there was copious evidence to suggest the shotguns were "conveniently made available to facilitate the manufacture of marijuana, protect the product, and embolden [Jones]." *Angel*, 576 F.3d at 323.

Jones's last sub-claim is that the fortress theory cannot apply to § 2K2.1 cases before the 2006 amendment because the theory stemmed from a case, *Henry*, 878 F.2d 937, that interpreted an old version of 18 U.S.C. § 924(c) that only criminalized "use" of a firearm in furtherance of a drug trafficking crime. Jones argues that the Supreme Court implicitly overruled *Henry* in *Bailey v. United States* when it ruled that a proximity and accessibility standard like the fortress rule could not constitute "use." 516 U.S. 137, 143–44 (1995). However, we have rejected the argument that *Bailey* forecloses the application of the fortress theory to U.S.S.G. § 2K2.1(b)(6), which applies also to "possession" of a firearm, *see United States v. Cheney*, 183 F. App'x 516, 520 (6th Cir. 2006), and we have applied the theory both after *Bailey* and after the 2006 amendments, *see Angel*, 576 F.3d at 323; *Covert*, 117 F.3d at 946–47. We hold, therefore, that the district court did not err in applying a four-pointenhancement to Jones's offense level pursuant to § 2K2.1(b)(6).

Jones also claims that the sentence imposed by the district court was substantively unreasonable. Plain-error review does not apply to a substantive reasonableness challenge when a defendant fails to object at sentencing because "reasonableness is the standard of *appellate* review." *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (*en banc*). Instead, we review for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007). A "sentence may be substantively unreasonable 'when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent [18 U.S.C.] § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor.'" *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007) (quoting *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006)). Where the sentence falls within the Guidelines range, a presumption of reasonableness applies. *Vonner*, 516 F.3d at 389.

Jones argues that because the Supreme Court has recognized that district judges can take policy considerations into account during sentencing, *see Kimbrough v. United States*, 552 U.S. 85, 109–10 (2007), the district court imposed a substantively unreasonable sentence by not considering the public policy and empirical data underlying the firearms-possession guidelines. Citing a Sentencing Commission Working Group Report from 1990, Jones contends that the portion of the firearm guidelines that increase the offense level for prior convictions deserves less consideration because it was designed to align with the minimum sentences triggered by the Armed Career Criminal Act and not to meet the standard goal of the Sentencing Commission to craft sentences sufficient but not greater than necessary to achieve the purposes of sentencing. In his own case,

therefore, Jones argues that the district court gave insufficient weight to the fact that his prior drug conviction resulted in a 45-day sentence, making the guideline range resulting from a six-point increase in his offense level under § 2K2.1(a)(4)(A) substantively unreasonable.

We find Jones's argument unavailing. Although *Kimbrough* allows district courts to consider the policies of the Guidelines and potential disparities resulting from them when determining an appropriate sentence, it by no means held that the failure to adopt one particular policy perspective renders a within-Guidelines sentence substantively unreasonable. In any event, the district court explicitly considered Jones's history and characteristics, including the extent of his criminal history. In doing so, the district court noted that Jones's criminal history was "not of an egregious nature." Jones also argues that the court should have reduced his sentence based on his relationship with his children and employment record. But the sentencing transcript reveals that the district court did consider these factors, finding Jones to be "an articulate, intelligent young man, but a young man who for reasons only known to himself has not accepted responsibility . . . ." The district court then imposed a 72-month sentence in order to "provide some kind of a sentence that provides an adequate deterrence to [Jones] and protects the public, but at the same time provides [him] with some medical, educational, and correctional treatment." In light of the record and the district court's consideration of the § 3553(a) factors, we cannot say the within-Guidelines sentence imposed was substantively unreasonable.

### III.

For the reasons discussed above, we affirm Jones's sentence.