**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0730n.06

**No. 08-2547**

**FILED**

**Nov 19, 2010**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | **ON APPEAL FROM THE** |
| Plaintiff-Appellee, | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| v. | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| Joshua Bruce Vicol, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:    MARTIN and McKEAGUE, Circuit Judges; and LUDINGTON, District
Judge.[*]

**McKeague, Circuit Judge.**   This case poses the question whether, on remand after an

incorrect calculation under the sentencing guidelines, a district court can consider post-sentencing

rehabilitative efforts to grant a downward departure in its resentencing.  The district court, relying

on two cases within this Circuit, determined that it could not appropriately consider such evidence,

and sentenced defendant to the low end of the appropriate guideline range.

Whether evidence of post-sentencing rehabilitation can be considered in such a re-sentencing

poses a close question; indeed, the issue has been accepted for review by the Supreme Court in

*Pepper v. United States*, 130 S. Ct. ___ (cert. granted June 28, 2010); decision below at 570 F.3d

958 (8th Cir. 2009). However, we need not resolve the issue in the present case.  The district court

_____

[*]Honorable Thomas L. Ludington, United States District Judge for the Eastern District of
Michigan, sitting by designation.

was very clear that even if it were to consider the new evidence, it would not impose a lower sentence. Therefore, any error was harmless, and we **AFFIRM** the district court's decision.

## I. BACKGROUND

The defendant, Joshua Vicol, was indicted for kidnapping two women on July 24, 2003. The jury heard that prior to that evening, defendant was in county jail and told fellow inmates that he was going to go after his girlfriend when he got out, and he described a plan to abduct her. (R.E. 108, Tr. Vol. 2, 226-28.) One of his victims, Brooke Firestone, testified that she was the mother of the defendant's child but they had separated. Vicol maintains the two were still together. On July 24, 2003, Firestone agreed to meet Vicol at a party, along with her friend Theresa Volker. During a conversation between Vicol and Firestone, Vicol became angry, which he alleged triggered a "manic episode." (Appellant Br. At 10.) Firestone testified that he grabbed her face, pushed her to the ground, and got on top of her.

When others separated the two, Firestone and Volker went to Volker's car and left the party. However, Vicol got into his car and followed them, ramming his car into theirs repeatedly until they pulled over. He then approached the vehicle carrying a pair of shears, and when they would not open it, he broke the driver's window. Vicol ordered Volker (who was driving) into the backseat, and he slashed her face with the shears, leaving a cut that required several stitches and left a permanent scar. Vicol got into the driver's seat. He smashed Firestone's head into the dashboard several times and punched her, breaking one of her teeth. (R.E. 107, Tr. Vol. 1 at 32-34, 55, 111.) He also stabbed her in the leg with the shears, and cut off her hair. (*Id*. at 55.) He told both women that he was going to kill them. (Id. at 105.) Vicol then took the women to a hotel. He let Volker go after a few

hours, but refused to release Firestone for several days.  Finally, his family convinced him to surrender to authorities.

The district court originally had jurisdiction in this matter pursuant to 18 U.S.C. § 3231 in 2003, when the defendant was indicted on a one-count indictment for kidnapping in violation of 18 U.S.C. § 1201(a)(1).  Defendant admitted to using drugs and alcohol during the incident, and told various individuals that he had taken Vicodin and methamphetamine.  He pled not guilty by reason of insanity.

Upon a jury verdict of guilty, the district court held a sentencing hearing.  The Presentence Investigation Report stated that the Sentencing Guidelines called for a base offense level of 32, which combined with his Criminal History level of V resulted in a range of 360 months to life in prison.  The defendant objected, stating that the previous Guidelines Manual assessed a base level for this offense of only 24.  The district court (erroneously) understood Vicol to be saying that the Guideline increase came after the crime occurred, and so felt compelled to impose a base offense level of 24.[1]  He did, however, comment on the severity of the offense: "In this case, both the facts of the offense and the defendant's criminal history not only indicate but scream out that this is a defendant against whom the public must be protected."  He imposed a sentence of 188 months, the maximum sentence provided by the Guidelines, on July 6, 2005.[2]

---

[1]The 2002 Guidelines Manual was amended effective May 30, 2003, increasing the base level from 24 to 32.  The confusion occurred because the amendment was not incorporated into the text of the section at that time, and therefore, a reader had to consult Appendix C to learn of the higher base level.  However, the increased level was in place at the time of Vicol's offense.

[2]Judgment was never actually entered on this original sentence until after the first appeal.

The next day, the government moved to "correct" this sentence under Federal Rule of Criminal Procedure 35, noting that the Guidelines in place at the time of the offense did not, in fact, call for a base level of 24. The court scheduled a hearing on this motion, and after hearing the parties' arguments, attempted to correct its error. Again focusing on the nature of the kidnapping and Vicol's criminal history, the court sentenced the defendant to 360 months and entered that judgment on July 18, 2005.

However, on appeal this Court determined that the district court lost jurisdiction to take that action under Rule 35 because it failed to act within seven days of sentencing. *United States v. Vicol*, 460 F.3d 693, 696-97 (6th Cir. 2006). It then remanded the case for the original 188-month sentence to be entered, making it clear that both parties could appeal that judgment. *Id*. at 697. The government timely appealed the 188-month sentence, and this Court once again heard the appeal. It determined that the 188-month sentence was in error, as it was based on an erroneous application of the Guidelines, and remanded once again for a sentence to be entered that was calculated on the proper Guideline range. *United States v. Vicol*, 514 F.3d 559 (6th Cir. 2008).

On remand, the case was reassigned to a new district judge by administrative order. It is this remand that is now on appeal. At re-sentencing, Vicol presented information about his activities after the initial sentencing. He provided evidence of participation in the Bureau of Prisons Restorative Justice program, letters from one of the victims and her parents, and evidence that he had since been behaving in prison, as well as sending some of his prison earnings to support his child. The defendant argued that this information should be considered and warranted a downward departure from the Sentencing Guidelines range.

In pronouncing sentence, the district judge discussed several aspects of his decision. He acknowledged that it was his duty to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. 3553, and that the Guidelines were advisory to the Court. The judge stated that he took the Guidelines into account as an initial benchmark, but was ultimately making an individualized assessment based on an array of factors, only one of which was the guidelines range. After describing the § 3553 factors, the district judge addressed the post-sentencing rehabilitation evidence.

> Addressing the legal issue of whether this Court can consider post-sentence rehabilitation conduct by the defendant. The Court has found two cases; first, the *Worley* case . . . . The Court has also found the case of *United States vs. Keller*. . . . My reading of the *Keller* case really forecloses, in the Court's judgment, consideration of post-sentencing rehabilitation conduct and answers the question that perhaps was left open by the dicta . . . in the *Worley* case. So I also recognize that both the *Worley* and *Keller* cases are post-*Booker* remand cases, but in the Court's judgment, the holdings of those cases applied equally to a situation as we have here in which there is a remand from the Sixth Circuit because of a misapplication of the sentencing guidelines. The holdings of the *Keller* and *Worley* cases, in the Court's judgment, preclude the consideration by this Court of post-rehabilitation conduct by the defendant.

The court stated that it was "satisfied that the applicable guideline range that the Court is dealing with now, that being 360 months to life, is the appropriate guideline range, and that the guidelines are appropriately scored at Offense Level 38, Criminal History Category V." It concluded that "in light of the fact that it's my duty here to impose a sentence which would have been imposed at the time of original sentencing, in the Court's judgment, the rehabilitation efforts by the defendant . . . are not relevant to this determination today."

Government counsel asked the court to state on the record whether its sentence would be different if it could consider the post-sentencing information. The court first addressed the severity of the offense and Vicol's criminal history:

> This is a particularly vicious crime that the defendant committed back in July of 2003 with the attendant injuries to the victims, the physical injuries which were evident during the course of the trial . . . . So this case is a particular heinous case, in the Court's judgment, and the sentence must reflect the very very serious nature of the offense. In addition to that, the sentence must also provide just punishment for the offense and promote respect for law, and in my judgment, a sentence within the guideline range is the appropriate sentence in this case. The Court must also consider deterrence of criminal conduct . . . and send a clear signal to those who may contemplate similar conduct, that if you do commit an offense of this seriousness, that you can expect a severe sentence . . . . I think that one is particularly important here. I don't give it undue weight simply because I think all of the factors that the Court must consider, taking a snapshot in 2005, reflect the need for a severe sanction in this case. . . . [I]t's been noted that the defendant had, at the time of the instant offense, 17 prior convictions . . . that in the Court's judgment balances off significantly any mitigating factors that might be attendant to this particular case. So for all those reasons, the Court believes that a sentence within the guideline range as calculated is the appropriate sentence.

Then, addressing Vicol directly, the court concluded that even if it could consider the post-sentencing rehabilitation evidence, it would not change its sentence:

> Sir, I don't want you to pretend at all that the accomplishments that you have made while you've been incarcerated are somehow minimized. . . .
> . . .
> But as a sentencing judge, I expect [defendants] to be about the business of rehabilitating themselves. And clearly Mr. Vicol has done that, but it is not something that in the Court's judgment takes this out of the mind run of cases that I would expect defendants to rehabilitate themselves while they are in the institution. So if I am wrong on my analysis of the *Worley* and *Keller* cases, given the gravity of all the other factors that are attendant to this case . . . should I be wrong on the holding of the *Worley* and *Keller* cases, I don't think I am, I've looked at the law very closely . . . even if I am wrong . . . that would not make a difference in my sentence here today.

The district court entered judgment on a sentence of 360 months; it is this judgment that the defendant now appeals.

## II. JURISDICTION

Though the procedural posture of this case is complex, the current appeal is from a final judgment issued by the district court on November 20, 2008. The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231 in the original trial, and pursuant to 18 U.S.C. § 3582 and § 3742 on the last remand. The defendant timely appealed, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## III. ANALYSIS

### A. The District Court's Refusal to Consider Post-Sentencing Rehabilitation Evidence

First, defendant argues that the district judge erred in failing to consider his post-sentencing rehabilitative conduct and grant a downward departure based on this information. The standard of review for a district court's sentencing decision is reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court's sentence must be upheld unless it is found to be either procedurally or substantively unreasonable. *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006).

However, we need not decide this issue. Even if the district court's determination that it could not consider the evidence was wrong, the error was harmless and remand is unnecessary. "A remand will not be required, and an error deemed harmless . . . when 'we are certain that . . . any such error did not affect the district court's selection of the sentence imposed.'" *United States v. Abboud*, 308 F. App'x 977, 983 (6th Cir. 2009) (quoting *United States v. Hazelwood,* 398 F.3d 792, 801 (6th Cir. 2005). Here, the district judge explicitly stated that "[i]f I am wrong on my analysis

of the *Worley* and *Keller* cases . . . that would not make a difference in my sentence." The judge

could not have been more clear. Considering the severity of the offense and Vicol's criminal history,

the judge did not believe that a departure below the guideline range was warranted. Therefore, any

error on this issue was harmless.

**B. The Double Jeopardy Claim**

Vicol argues that the Double Jeopardy Clause of the Fifth Amendment and the government's

failure to take a cross-appeal should bar the imposition of a sentence greater than 188 months.

However, he did not raise this argument before the district court, and therefore it is subject to only

plain error review. *United States v. Vonner*, 516 F. 3d 382, 385-86 (6th Cir. 2008) (en banc). To

establish plain error, he must demonstrate, 1) an error, 2) that was clear or obvious, 3) which affected

his substantial rights, and 4) so affected the fairness, integrity, or reputation of the judicial

proceeding that this Court should use its discretion to correct it. *Puckett v. United States*, 120 S.

Ct. 1423, 1429 (2009). "Meeting all four prongs is difficult, as it should be." *Id.* (internal

quotation omitted).

Vicol's argument is essentially this: the government was required to appeal the sentence of

188 months when it was first pronounced by the district court in 2005. Because it failed to do this,

that sentence became final. Because it became final, an increase of that sentence was prohibited by

the Double Jeopardy Clause. This argument is without merit.

First, the government did not fail to appeal the 188-month sentence. Rule 4(b) of the Federal

Rules of Appellate Procedure governs the time for appeal in criminal cases. It provides that a

defendant has 10 days in which to file an appeal, and the government has 30 days. In both cases, the

time period runs from the *entry of the judgment*. FED. R. APP. P. 4(b)(1). The rule also states that "[a] notice of appeal filed after the court announces a decision, sentence, or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry." *Id.* at 4(b)(2). Case law is clear that the time limit to file an appeal does not begin until the judgment itself is entered.[3] *See Ladder Man, Inc. v. Mfr.'s Distribution Serv., Inc.*, 234 F.3d 1268, 2000 WL 1679439, at *3 n.3 (6th Cir. 2000) (unpublished) ("[T]wo procedural requirements exist for entry of judgment, which triggers the running of the time for appeal: first, a statement of the judgment on a separate document, and second, the entry of judgment by the clerk . . ."(internal quotations omitted)); *Shalala v. Schaefer,* 509 U.S. 292, 302-03 (1993) ("Absent a formal judgment, the District Court's April 4 order remained 'appealable' at the time that Schaefer filed his application [in July] and thus the application was timely.").

Here, the district court pronounced its original sentence on July 6, 2005, but never entered that judgment at that time. The first judgment the court entered (though beyond its jurisdiction) was for 360 months, from which defendant appealed. The judgment on the sentence of 188 months was not entered until after the first appeal and remand, on November 3, 2006. It was this judgment that triggered the government's duty to appeal within 30 days. The government promptly appealed well within that time-frame.

---

[3]In a civil proceeding, a judgment is entered for purposes of appeal if the court formally enters judgment in a separate document *or* 150 days have run. FED. R. APP. P. 4(a)(7)(A). There is no correlative default time period in criminal cases; instead, the time to appeal runs from the entry of judgment on the criminal docket. *Id.* at 4(b)(1).

Therefore, the government did not fail to appeal the 188-month sentence, and in fact, timely

appealed that sentence when judgment was actually entered after the first remand from this Court.

"A case is not yet final when it is pending on appeal.  The initial sentence has not been finally

'imposed' . . . because it is the function of the appellate court to make it final after review or see that

the sentence is changed if in error." *United States v.  Clark*, 110 F.3d 15, 17 (6th Cir. 1997).  The

Supreme Court has stated:

> The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.  In this case the court only set aside what it had no authority to do, and substituted directions required by the law to be done upon the conviction of the offender.  It did not twice put petitioner in jeopardy for the same offense.  That sentence as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense.

*Bozza v. United States*, 330 U.S. 160, 166-67 (1947) (internal citations omitted).  Because the

sentence in this case did not become final, the increase in the sentence upon remand did not

implicate the Double Jeopardy Clause of the Fifth Amendment.

## V.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.