**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0789n.06

No. 09-2173

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Dec 28, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| KENNETH JAMES JOHNSON, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |
| | ) | |

**Before:  MARTIN and MOORE, Circuit Judges;  GWIN, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.**

When this panel previously considered Kenneth James Johnson's sentence for conspiracy to distribute and distribution of crack cocaine, we remanded for resentencing in light of *Spears v. United States*, — U.S. —, 129 S. Ct. 840 (2009).  Now, Johnson has been resentenced to 110 months in prison, a term that is the same length as his original sentence.  Rather than expressing agreement or disagreement with the crack guidelines, the district court asserted that Congress had authorized the 100-to-one crack-to-powder ratio and deemed the courts an improper forum to reconsider the ratio.  *Kimbrough* directly contradicts those assertions.  Because the district court did not fully

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

recognize the scope of its discretion, we **VACATE** Johnson's sentence and **REMAND** for resentencing.

## I. BACKGROUND

In 2007, Johnson pleaded guilty to conspiracy to distribute more than five grams of cocaine base (crack), one count of crack distribution, and four counts of distributing more than five grams of crack. We detailed the history of Johnson's case in our prior decision. *See United States v. Johnson*, 553 F.3d 990, 992–95 (6th Cir. 2009). Of relevance to this appeal is Johnson's criminal history, which includes twenty-three convictions spanning over three decades. Many of the crimes from which his criminal history was calculated, such as operating while impaired and second-degree retail fraud, were relatively minor. Others, such as aggravated domestic violence, were more severe. Some crimes, including unarmed robbery and assault, were too remote to include in the criminal-history computation. Totaled, the district court identified 15 criminal-history points, placing Johnson in Criminal History Category VI. Johnson argued that Category VI overrepresented the seriousness of his offenses, but the district court denied Johnson's request for a downward departure. Combined with an offense level of 25, the Sentencing Guidelines produced a range of 110 to 137 months of imprisonment. Acknowledging its authority to employ a crack-to-powder ratio other than 100 to one, the district court opted to use the 100-to-one ratio in light of Congress's repeated failure to adopt a different ratio. The district court sentenced Johnson to 110 months in prison, which was the same sentence that it had imposed at Johnson's first sentencing. Johnson has appealed his new sentence.

## II.  ANALYSIS

### A.  Criminal-History Category

Johnson contends that the district court erred by not departing downward when calculating his criminal-history category.  As we explained in our prior decision in Johnson's case, we normally do "'not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure.'" *Johnson*, 553 F.3d at 999 (quoting *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir.), *cert. denied*, — U.S. —, 129 S. Ct. 469 (2008)).  "[W]e presume that the district court understood its discretion, absent clear evidence to the contrary."  *Santillana*, 540 F.3d at 431.  Here, the resentencing transcript reflects the district court's understanding and exercise of its discretion.  The district court found that Category VI accurately reflected Johnson's "very very substantial" criminal history, which exceeded the minimum required for placement in Category VI.  R. 100 (Resentencing Tr. at 31).  When determining the likelihood that Johnson would reoffend, the district court emphasized Johnson's failure to participate in rehabilitation programs in state prison and the number of crimes that were not factored into his criminal history.  *Id.*  The district court's reasoning reveals an understanding of its power to depart from the Guidelines.  We will not review its decision to refrain from exercising that power.

### B.  *Spears* and Sentencing Disparities

We remanded Johnson's case so that the district court could consider Johnson's sentence in light of *Spears*, in which the Supreme Court clarified its holding in *Kimbrough v. United States*, 552 U.S. 85 (2007).  *Spears* authorized district courts "to reject and vary categorically from the crack-

cocaine Guidelines based on a policy disagreement with those Guidelines." *Spears*, 129 S. Ct. at 843–44. "Although *Kimbrough* allows district courts to consider the policies of the Guidelines and potential disparities resulting from them when determining an appropriate sentence, it by no means held that the failure to adopt one particular policy perspective renders a within-Guidelines sentence substantively unreasonable." *United States v. Jones*, 370 F. App'x 577, 582 (6th Cir. 2010) (unpublished opinion). That conclusion is equally true of *Spears*. Using the Guidelines ratio is not automatically unreasonable. *See United States v. Simmons*, 587 F.3d 348, 365–66 (6th Cir. 2009) ("[T]he disparate treatment of crack and powder cocaine advised by the Guidelines is not per se unreasonable or unconstitutional."), *cert. denied*, 130 S. Ct. 2116 (2010). "[W]hen a district court observes that the Guidelines are advisory and provides no indication that policy disagreements are not a proper basis to vary, then a sentence within the Guidelines range remains presumptively reasonable on appeal." *Id.* at 364. On the other hand, when a district court indicates that policy disagreements are not a proper basis to vary, then the resulting sentence is not presumptively reasonable. More fundamentally, in such a case, the district court has committed procedural error by failing to appreciate the scope of its discretion. *See United States v. Santillana*, 540 F.3d 428, 431 (6th Cir.), *cert. denied*, 129 S. Ct. 469 (2008).

At Johnson's resentencing, the district judge purported to recognize the advisory character of the Guidelines. *See* R. 100 (Resentencing Tr. at 25–26) ("I fully recognize my authority to vary from the crack/powder cocaine guidelines based solely on a policy disagreement with the 100 to one ratio. . . . The operative word in the *Kimbrough* case is may, m-a-y."). However, the district judge's remarks about the proper role of courts reveal his belief that a policy disagreement is not a proper

4

basis for a judge to vary. The district court agreed with the 100-to-one ratio, not for its substance, but because "Congress has said 100 to one is the appropriate ratio by directly establishing the mandatory minimums, which in effect engrafted a 100 to one ratio on the criminal statutes[,] or indirectly by not changing the law in the face of many opportunities to do so." *Id.* at 26. After documenting the history of congressional inaction at length, the district judge reasoned that "the legislative branch of government is precisely the correct forum for this policy judgment. Courts are ill-equipped to make these decisions." *Id.* at 28; *see also id.* at 30 ("I believe that decision is for the legislative and executive branches of the government and not for this Court."). The district court concluded that deviating from the 100-to-one ratio would increase the probability of sentencing disparities among defendants who are sentenced for crack offenses because judges differ "within districts and across the country" and because judges cannot predict future changes that Congress might enact. *Id.* at 29.

The district court's analysis is contrary to *Kimbrough*, which explained that the crack guidelines were not based on the sort of "empirical data and national experience, guided by a professional staff with appropriate expertise," that normally characterizes the institutional competence of the Commission. 552 U.S. at 109 (internal quotation marks omitted). *Kimbrough* clarified the irrelevance of congressional deference as well: the relevant statute "says nothing about the appropriate sentences" for crack offenders who fall between the statutory minimum and maximum and the Court "decline[d] to read any implicit directive into . . . congressional silence." *Id.* at 103. In fact, the *absence* of a congressional mandate to use the 100-to-one ratio is what enabled the Supreme Court to afford discretion to district courts. *Id.* at 102–06. Finally, *Kimbrough*

denied that unwarranted disparities were a reason to tie district courts to the 100-to-one ratio. *Id.* at 106–08 (describing disparities as "a necessary cost of the remedy").

In light of *Kimbrough*, the district court's decision constituted procedural error. While district judges have wide discretion in fixing a crack-to-powder ratio, they are not free to cede their discretion by concluding that their courtrooms are the wrong forum for setting a crack-to-powder ratio. *See United States v. Herder*, 594 F.3d 352, 363 (4th Cir. 2010) (holding that, when a district court uses the Guidelines ratio because "'Congress has decided that that's an appropriate ratio,'" it has "failed to recognize its discretion to sentence outside the crack cocaine Guidelines"); *United States v. Jones*, 531 F.3d 163, 180–82 (2d Cir. 2008) (remanding for resentencing due to ambiguity about the district court's understanding of its discretion when it said the crack-powder disparity is "'what it is, and I think the Court in general is wise to follow that directive and not substitute its own view'"); *United States v. Tabor*, 531 F.3d 688, 690–92 (8th Cir. 2008) (remanding for resentencing because *Kimbrough* later rejected each reason that the district judge had given for using the 100-to-one ratio: congressional intent, fear of sentencing disparities, and lack of institutional capacity). By failing to recognize the extent of its discretion, the district court did not comply with our instructions for the prior remand.

On remand from this decision, the district court may, as a matter of policy, agree or disagree with the Guidelines ratio that designates crack offenses as more serious than powder offenses. But

it must not rely on the Guidelines for reasons that *Kimbrough* rejected, such as institutional competence, deference to Congress,[1] or the risk that other judges will set different ratios.

## C. Reasonableness

Johnson asserts that his sentence was both procedurally and substantively unreasonable. He mentions one alleged procedural error: the district court said that it would "consider" his post-sentencing rehabilitation yet imposed the same sentence as before. R. 100 (Resentencing Tr. at 35).

Whether district courts may vary downward based on postsentencing rehabilitation is a question on which the Supreme Court has granted certiorari. *United States v. Pepper*, 570 F.3d 958 (8th Cir. 2009), *cert. granted*, 130 S. Ct. 3499 (2010); *see also* Brief of the United States at 29–51, *Pepper*, No. 09-6822 (S. Ct. Aug. 2010) (conceding that postsentencing rehabilitation is a permissible consideration); *cf. United States v. Worley*, 453 F.3d 706, 709 (6th Cir. 2006) (holding that district courts may not consider postsentencing rehabilitation on *Booker* remands). But the district court here, proceeding as though it had the legal authority to consider postsentencing rehabilitation, elected not to vary from the Guidelines based on the facts of Johnson's case. As a result, resolution of the legal question pending before the Supreme Court does not alter the outcome

---

[1] In fact, while Johnson's latest appeal was pending before this court, Congress passed the Fair Sentencing Act of 2010 "[t]o restore fairness to Federal cocaine sentencing." *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (Aug. 3, 2010). The act reduced the discrepancy in mandatory minimums between crack and powder offenses from 100 to 1 down to 18 to 1. The law does not apply retroactively, and a panel of this court has held that "we must apply the penalty provision in place at the time [that Johnson] committed the crime." *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010). Nevertheless, its passage demonstrates that even Congress has gravitated away from the 100-to-one ratio.

of Johnson's appeal.[2] *See United States v. Vicol*, No. 08-2547, 2010 WL 4810215, at *4 (6th Cir. Nov. 19, 2010) (unpublished opinion) (finding the refusal to consider postsentencing rehabilitation, if erroneous, to be harmless because the district court said that the sentence would not have changed).

Here, the district court did what it promised: it considered Johnson's postsentencing rehabilitation. It simply found Johnson's conduct inadequate to justify a lesser sentence. R. 100 (Resentencing Tr. at 35–36) ("[R]ecognizing Mr. Johnson['s] rehabilitative efforts[,] I also must be concerned about specifically deterring Mr. Johnson. He is starting to make strides in that regard, but my concerns still remain high concerning whether Mr. Johnson when released will commit further crimes."); *id.* at 37 ("Mr. Johnson has made significant strides . . . [b]ut . . . is writing on a record here that, in the Court's judgment, requires a significant period of incarceration to make sure that [he] continues his rehabilitative efforts . . . ."). The district court did not commit reversible procedural error in reaching that conclusion.

Johnson also argues that failure to consider post-sentencing rehabilitation rendered his sentence substantively unreasonable. Because we have concluded that Johnson's sentence was procedurally unsound in light of *Kimbrough*, we do not address whether the sentence was substantively reasonable. *See United States v. Garcia-Robles*, 562 F.3d 763, 768 (6th Cir. 2009).[3]

---

[2]The district court also recommended that "Johnson be considered for the 500[-]hour program" for drug treatment in light of his postsentencing rehabilitation efforts. R. 100 (Resentencing Tr. at 37). That recommendation is not before us in this appeal.

[3]We also asked the district court to "show that it has adequately considered § 5G1.3(c) and the relevant commentary in determining whether Johnson's federal sentence should run consecutive

### III. CONCLUSION

For the reasons stated above, we **VACATE** Johnson's sentence and **REMAND** for resentencing.

---

to his undischarged state sentence." *Johnson*, 553 F.3d at 998. The district court complied, and Johnson has not raised the issue on appeal.