**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0226n.06

**No. 16-3473**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **FILED** |
| v. | ) | Apr 19, 2017 |
| | ) | DEBORAH S. HUNT, Clerk |
| CORY A. BUCKHOLZ, | ) | |
| | ) | ON APPEAL FROM THE |
| Defendant-Appellant. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |

BEFORE: SILER, MOORE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Cory Buckholz appeals his within-Guidelines sentence of 151 months for knowingly receiving and distributing visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Because this sentence is procedurally and substantively reasonable, we affirm.

I.

In August 2014, law enforcement officers executed a search warrant at Buckholz's residence. Buckholz was twenty-five years old and living with his mother. For most of his life, he had battled depression, anxiety, and drug addiction. Buckholz previously earned some college credits, however, and had worked as an IT administrator for a financial services company. He also ran his own computer repair business.

Buckholz used peer-to-peer software on his home computer to download and share child pornography. An undercover agent downloaded eight videos from Buckholz's computer, which depicted prepubescent girls engaged in sexually explicit conduct with adult men, and at times being subjected to sadistic conduct including bondage. These videos led to the execution of a search warrant during which agents seized several items from Buckholz's room, including two external hard drives, toddler pull-up diapers, and two pairs of girls' underwear. A forensic analysis of the hard drives revealed over six hundred additional images depicting prepubescent girls, many under the age of twelve, engaged in oral and genital intercourse with adult men.

Buckholz pleaded guilty to knowingly receiving and distributing visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). In the final presentence report ("PSR"), the probation officer calculated a total offense level of 34 under U.S.S.G. §§ 2G2.2 and 3E1.1 and placed Buckholz in Criminal History Category II.[1] Per the sentencing table, Buckholz's advisory Guidelines range was 168-210 months.

In his sentencing memorandum, Buckholz contended his criminal history score should be reduced to Category I, yielding a Guidelines range of 151-188 months. Moreover, he requested a downward variance to the mandatory minimum sentence of 60 months based on his personal circumstances. Buckholz also urged the district court to reject the applicable Guidelines on policy grounds because, in his view, they do not distinguish between those offenders who produce child pornography and those who view and distribute it. The government agreed the district court could reject a Guideline on policy grounds, but pressed for a Guidelines sentence.

At sentencing, the district judge made a preliminary finding of a total offense level of 34 and a criminal history category of II for a sentencing range of 168-210 months. Next, the district

---

[1]Buckholz was sentenced on April 26, 2016. The 2015 version of the Guidelines Manual applied. *See* U.S.S.G. § 1B1.11(a).

judge explained he would compare the 18 U.S.C. § 3553(a) sentencing factors to Buckholz's background, character, and history, and, in light of the facts and circumstances particular to Buckholz's case, fashion a sentence "sufficient but not greater than necessary to meet the ends of justice." He acknowledged "the Guidelines are advisory."

After hearing the parties' statements, the district judge kept his finding of a total offense level of 34, but found that Buckholz's "criminal history category was overrepresented," and departed downward to Category I. He credited Buckholz for his addressing his addiction and his lack of significant criminal history. The district judge further acknowledged Buckholz's "willingness to accept responsibility for [his] conduct[.]" He imposed a sentence of 151 months, at the bottom of the adjusted Guidelines range and seventeen months below the initial advisory range, followed by five years of supervised release. Buckholz timely appeals from this sentence.

II.

A sentence must be both procedurally and substantively reasonable. *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014). We review reasonableness challenges for abuse of discretion. *Id.* We first consider whether the district court committed "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).

Buckholz urged the district court to reject the applicable child-pornography Guideline because it results in sentences greater than necessary to achieve the purposes of sentencing by failing to distinguish between those offenders who view and distribute child pornography and

those who produce it. The district court declined, and imposed a Guidelines sentence. Defendant argues this sentence is procedurally unreasonable because the district judge did not recognize his power to vary from the Guidelines specifically on policy grounds.

We have "said that a district court may disagree with § 2G2.2 on policy grounds, just as it may any other" Guideline. *United States v. Bistline*, 665 F.3d 758, 761 (6th Cir. 2012). "A district court errs when it 'fail[s] to appreciate the scope of its discretion' and 'indicates that policy disagreements are not a proper basis to vary.'" *Kamper*, 748 F.3d at 742 (quoting *United States v. Johnson*, 407 F. App'x 8, 10 (6th Cir. 2010)). We "presume that the district court understood its authority to categorically reject the Guidelines on policy grounds in the absence of any indication to the contrary, at least where it had the opportunity to consider an argument in favor of such a rejection or its authority to do so was clearly established at the time of sentencing." *United States v. Staten*, 435 F. App'x 422, 425 (6th Cir. 2011) (citation omitted); *Cf. United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008) ("[W]e presume that the district court understood its discretion, absent clear evidence to the contrary.").

A review of the sentencing record as a whole supports the presumption that the district judge properly understood his authority. The district court was aware of Buckholz's policy argument, which he presented both in his sentence memorandum and at the sentencing hearing. At the hearing, defense counsel repeatedly reminded the district court that it could deviate from the Guidelines range on policy grounds. The government never contested this proposition, conceding that "[t]he Court could, as some of your brethren have done, reject the Guidelines completely," and citing two cases in which judges had recently done so. The prosecutor admitted "the Sixth Circuit says if you disagree with the Guidelines, you can reject them, of course, with your reasoning[.]" There was no dispute the district court had the authority to

deviate from the Guidelines on policy grounds, and the district judge never disagreed with, or even questioned, the parties' statements to that effect.

In sentencing Buckholz, the district judge never asserted he *must* do anything. He explicitly acknowledged the Guidelines were not mandatory, and that he could vary or depart, and demonstrated his appreciation of that fact by reducing Buckholz's criminal history category and, as a result, his Guidelines range. Moreover, the district court expressed repeated skepticism of Buckholz's policy grounds argument. When defense counsel argued the Guidelines unfairly "imply that every endgame user is responsible for the harm . . . done to the original children[,]" the district court interjected that the Guidelines were "saying in part responsible." Later, when defense counsel again argued Buckholz should not be punished "as if he took the pictures and in fact hurt the children," the court stated he would not be because, if Buckholz "had been the producer of these images, he would have been charged under a different section." The district court noted a "significant difference" between the potential sentences a child pornography producer and defendants like Buckholz could receive. Buckholz was simply "not being treated the same" as someone who produced child pornography.

Before imposing sentence, the district judge twice acknowledged the parties' observation that other judges had varied from the Guidelines. And while some judges had rejected the Guidelines for being "awfully harsh" on offenders who just "looked at images," he thought it was more than "just looking at images" and stated the children depicted in the images suffer a lifetime of "degradation and embarrassment, humiliation and pain." When read in conjunction with the parties' agreement that the district court could vary on policy grounds, and that other judges did, the district judge's remarks throughout the hearing suggest he had considered

*whether* to vary from the child pornography Guidelines on those grounds, not *if* he could vary from them, and ultimately declined to do so in this case.

Buckholz presents no clear indication otherwise. In support of his position, Buckholz points to a line of questioning the district court initiated early in the hearing. The district judge initially asked defense counsel "[t]he question I always have in these cases" concerning what factors he should consider "in order to impose a sentence outside the Guidelines[.]" In response to defense counsel's assertion that the applicable Guidelines "overvalue" Buckholz's conduct, the district court observed:

> That goes to my question. That's a kind of policy question, isn't it? And Congress has decided that that is, this type of conduct warrants the Guideline of whatever the Guidelines falls to be. And my question is once I make a decision as to what the Guideline range is, under all the facts and circumstances presented here, do I have to – in order to go – depart from the Guidelines one way or the other, do I look at just Mr. Buckholz, or do I look at something else?

The district judge returned to his question at the end of the hearing, explaining that he asks "in almost every case" whether "there [is] anything in this case that's different that hasn't been considered when the Guidelines were established, anything unique?" Here, he concluded that "the Guidelines have considered everything."

For Buckholz, the district court thus presumed there was no reason to reject the Guidelines based on a policy disagreement. But it is Buckholz who presumes too much. Although the district court acknowledged the fact that Congress had made policy decisions with respect to what type of conduct fell within which Guideline, it did not indicate it felt *constrained* by them. Indeed, the district court repeatedly sought reasons to vary or depart from defense counsel. In context, the district court's inquiry speaks more to its concern for avoiding a sentencing disparity by not imposing too lenient a sentence compared to similarly-situated

defendants than to any belief it was not free to vary downward based on a categorical policy disagreement.

Nor do the cases Buckholz relies on compel a different conclusion. In *United States v. Johnson*, the district judge recognized "the advisory character of the Guidelines," but made "remarks about the proper role of courts" that revealed "his belief that a policy disagreement [was] not a proper basis for a judge to vary." 407 F. App'x at 10. Similarly, in *United States v. Montague*, 438 F. App'x 478 (6th Cir. 2011), the district court erred by "repeatedly express[ing] the mistaken view that it was without power to reject or vary from [an] enhancement on policy grounds, noting that it was 'not [its] job to figure out whether the Guidelines are justified or not.'" *Id.* at 482. The district court in *United States v. Vandewege*, 561 F.3d 608 (6th Cir. 2009), erred by stating "that policy judgments of whether crack and powder are equivalent or not is not for [it] to make." *Id.* at 610. And in *United States v. Johnson*, 553 F.3d 990 (6th Cir. 2009), we did not assume the district court lacked full awareness of its authority to vary, but relied on express statements made at the sentencing hearing, including that "the [c]ourt *must* apply the guidelines . . . " *Id.* at 996 n.1. The district judge made no such express statements here.

*United States v. Maye*, 582 F.3d 622 (6th Cir. 2009), does not help Buckholz either. In that case, we remanded because, even though the district judge "never explicitly stated that he felt bound by the crack-cocaine policies exemplified in the guidelines, the transcript of the sentencing hearing suggests that he may have acted in adherence to those principles." *Id.* at 633. Thus, even in *Maye*, there was *some* indication in the record that the district court felt so constrained. Buckholz points to no such acts or other indication in the sentencing record here.

The crux of Buckholz's claim is that the district judge did not state in so many words that he could vary from the Guidelines based on a policy disagreement. But a sentencing court need

not "explicitly recognize that such variances [on policy grounds] are permitted when the court has given no indication that it believes they are prohibited and explicitly recognizes the advisory nature of the Guidelines." *United States v. Simmons*, 587 F.3d 348, 364 (6th Cir. 2009). On the record before us, we have no clear indication the district court did not recognize its authority to vary below the Guidelines on policy grounds. Remand is not required.

III.

Finding no procedural error, we ask whether Buckholz's sentence is substantively reasonable. *See Kamper*, 478 F.3d at 739. A district court imposes a substantively unreasonable sentence by "selecting the sentence arbitrarily, basing the sentence on impermissible factors, failing to consider pertinent § 3553(a) factors, or giving an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005) (footnotes omitted). Mindful of our institutional limitations as a reviewing court, we exercise "a great deal of deference" when reviewing a defendant's sentence for substantive reasonableness. *United States v. Mayberry*, 540 F.3d 506, 519 (6th Cir. 2008). We presume Buckholz's within-Guidelines sentence is reasonable. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

Buckholz has not rebutted our presumption. He requested a downward variance to 60 months, or 108 months below the lowest end of his advisory Guidelines range (168 months). He received a sentence of 151 months, at the very bottom of his adjusted Guidelines range as calculated after the district court departed downward to Criminal History Category I. Buckholz argues this sentence is "greater than necessary" because the district court failed to give thoughtful consideration to his individual circumstances in light of the relevant sentencing factors. The sentencing record belies this claim.

At sentencing, the district judge acknowledged the parties' memoranda and repeatedly sought reasons to justify the significant variance Buckholz was requesting. In response, defense counsel argued at length that the Guidelines punish Buckholz's conduct too harshly, given that he was just "a young person sitting in his basement" who looked at pictures but did not abuse any children. Defense counsel also emphasized Buckholz's lack of any significant, or related, criminal history.

Buckholz detailed his financial struggles and substance abuse, expressed regret for his conduct, and explained how being incarcerated helped him achieve sobriety and realize the consequences of his behavior. In particular, Buckholz stressed the impact of his heroin addiction, and the district judge engaged him on this issue, asking how he got involved with the drug, how he paid for it, how he consumed it, and whether he was still using. Buckholz also explained how he had researched the programs available at certain detention facilities with an eye to improving himself while incarcerated and being "successful in life."

The district judge gave adequate weight to these mitigating facts. He observed that Buckholz was a "smart kid" who "live[s] by his wits" and deserved "great" sympathy "for the circumstances of [his] young life." The district judge noted "a huge difference in [Buckholz] from the time of [his] arrest," and credited him for persisting in his struggle with "addiction and [his] lack of criminal history, any kind of significant criminal history." He then reduced Buckholz's criminal history score to Category I. The district judge recognized Buckholz's "willingness to accept responsibility for [his] conduct," and imposed only the "minimum sentence" under the adjusted range in part because Buckholz was "a smart guy" who "just [has] to utilize intelligence and positively not negatively." Finally, he recommended placement at the detention facilities Buckholz requested because they offered sex offender treatment and trade

programs, showing consideration of a sentence that would afford an opportunity for treatment and training. *See* 18 U.S.C. § 3553(a)(2)(D). To the extent the district judge did not provide a detailed discussion of *all* Buckholz's mitigating circumstances when imposing sentence, he "is not required to explicitly address every mitigating argument that a defendant makes, particularly when those arguments are raised only in passing." *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008).

For the district judge, Buckholz's mitigating circumstances justified a sentence at the bottom of the adjusted Guidelines range, but no lower. He disagreed with defense counsel's conclusion that Buckholz was being punished as though he had produced child pornography, observing that different Guidelines, and harsher penalties, applied to producers. The district judge also stressed the seriousness of the offense, "[p]rominent among the § 3553(a) factors" in the child pornography context. *Bistline*, 665 F.3d at 764. He acknowledged some judges view Guidelines sentences in child pornography cases as "awfully harsh," but Buckholz was not "just looking at images" — he was participating in the "continued spread or distribution" of child pornography. Buckholz's conduct was "so harmful" to the community because the "children in the images have received a life sentence of degradation and embarrassment, humiliation and pain every time these images – they're out over the whole world[.]" As this court has also observed, producers of child pornography are indeed more culpable, but this fact does not render possessors and distributors like Buckholz "barely culpable at all." *Bistline*, 665 F.3d at 765.

The district judge was clearly skeptical that Buckholz fully appreciated the consequences of his behavior. During Buckholz's allocution, the district judge interjected that Buckholz was "talking about everything except what [he] did," and "kind of minimizing" his conduct. The district judge engaged in a dialog with Buckholz regarding his use of a shared folder to distribute

child pornography videos, insisting that Buckholz knew other people could access those files. He concluded Buckholz was "missing something" in that his "addiction didn't cause [him] to view and download child pornography." *Cf. Bistline*, 665 F.3d at 765 (remarking that knowing possession of child pornography is not a passive act "that happens to a defendant"). And although Buckholz's circumstances were "unique to [him]," they did not distinguish his case from the typical case covered by the Guidelines. Thus, the court found that a Guidelines sentence would be "consistent with most other sentences that have been imposed" for Buckholz's offense.

The district judge was appropriately attentive to a possible sentencing disparity in this case in light of Buckholz's request for a significant downward variance. Buckholz argues the district court's conclusion that a downward variance here would create such a disparity was erroneous because below-Guidelines sentences have been imposed and upheld in some other child pornography cases in this circuit. The flaw in Buckholz's reasoning is obvious. Section 3553(a)(6) concerns national disparities "among defendants with similar records who have been found guilty of similar conduct." The fact that this court has affirmed sentences below the Guidelines range in some child pornography cases does not compel the conclusion that it was unreasonable to impose a Guidelines sentence in this one. Just as this court has upheld shorter sentences for similar conduct, it has also upheld much longer ones. *See, e.g.*, *United States v. Sprague*, 370 F. App'x 638, 645–47 (6th Cir. 2010) (upholding a far-above-Guidelines 360-month sentence for receiving child pornography). The question on review is not whether the district court had the authority to impose a shorter sentence, but whether the district court was unreasonable in imposing the sentence it did.

The district judge considered Buckholz's mitigation arguments and provided a sufficient explanation for imposing a Guidelines sentence. Although it reached a different result than Buckholz wanted, "[a]s we have previously explained, '[t]hat the court did not weigh the factors raised by Defendant in the manner that he would have liked to have had them weighed does not indicate that the court acted improperly or disregarded Defendant's arguments.'" *United States v. Houston*, 813 F.3d 282, 296 (6th Cir. 2016) (quoting *United States v. Hogan*, 458 F. App'x 498, 504 (6th Cir. 2012)). Buckholz's within-Guidelines sentence is substantively reasonable.

IV.

For these reasons, we affirm defendant's sentence.